STATE OF IOWA, Appellee, v. ELMER POSTON, Appellant.

**WITNESSES:** Cross-Examination—Undue Limitation.   An accused has
1   an absolute right to cross-examine a prosecutrix in a charge of rape
on the subject of her previous melancholia and her prior accusa-
tions against other men of attempted rape.

**WITNESSES:** Good-Character Witness—Range of Cross-Examination.'
2   The cross-examination of a witness who has testified to the general
good reputation of an accused must be limited to the reports or
rumors which are current in the neighborhood and which tend to
negative good reputation.   Such a witness may not be questioned
about certain acts of misconduct on the part of the accused of
which the witness has personal knowledge.

**CRIMINAL LAW:** New Trial—Persistent Offer of Incompetent Testi-
3   mony.   Reversible error results from the act of a public prosecutor
in persistently attempting to inject into the record incompetent
but highly prejudicial testimony and directly justifying his conduct
in argument.

**CRIMINAL LAW:** Included Offenses—Reasonable Doubt.   The jury
4   must be plainly told, if request is made, that, if it has a reasonable
doubt of the defendant's guilt of an included offense, it can only
convict of that included offense of which it has no reasonable doubt
of the defendant's guilt.

Headnote 1:   40 Cyc. p. 2481.   Headnote 2:   11 C. J. p. 289; 34 Cyc.
p. 1624; 40 Cyc. pp. 2497, 2617.   Headnote 3:   16 C. J. p. 892; 17 C. J.
p. 300.   Headnote 4:   33 Cyc. p. 1509 (Anno.)

*Appeal from Pottawattamie District Court.*—E. B. WOODRUFF,
Judge.

APRIL 7, 1925.

THE defendant was indicted, tried, and convicted of assault
with intent to commit rape.   After the filing of a motion for a

new trial, which was overruled, judgment was entered, and defendant appealed.—*Reversed.*

*Tinley, Mitchell, Ross & Mitchell, Kimball, Peterson, Smith & Peterson,* and *Thomas O. Tacy,* for appellant.

*Ben J. Gibson,* Attorney-general, *C. E. Swanson,* County Attorney, and *F. E. Northrop,* Deputy County Attorney, for appellee.

ALBERT, J.—The first point raised in the case is that, in the cross-examination of the prosecuting witness, the defendant attempted to interrogate her as to whether she had not been a suf-

1. WITNESSES: cross-examination: undue limitation.

ferer from melancholia, and also whether, on several occasions, she had not accused other persons of raping or attempting to rape her.

While we have, in numerous cases, said that the extent of the cross-examination of witnesses is largely in the discretion of the trial court, yet this discretion cannot be arbitrarily exercised. Neither is it at all times limited strictly to the matters brought out under direct examination. That this cross-examination should have been permitted, is beyond the realm of dispute. The question is quite exhaustively discussed in the case of *State v. Brooks,* 181 Iowa 874; also in 1 Wharton on Law of Evidence (3d Ed.), Sections 544 and 545; *People v. Evans,* 72 Mich. 367 (40 N. W. 473).

Defendant tendered several witnesses to show the good reputation of the defendant.

Much confusion has arisen over the use of the words "good reputation" and "good character." While for some purposes they are recognized as expressing the same idea, yet fundamen-

2. WITNESSES: good-character witness: range of cross-examination.

tally, "character" and "reputation" are wholly different. Roughly stated, character is what a man actually is; while reputation is what his neighbors say he is. The evidence in this case

offered by the defendant, has to do with what the general reputation of the defendant was, in the neighborhood in which he lived. In an attempted cross-examination of a witness who gives this line of testimony, the cross-examiner must be limited to the same field: that is to say, his cross-examination must be lim-

ited to the reports or rumors current in the neighborhood that would tend to negative the good reputation. Witness cannot be asked as to certain acts of misconduct which he himself knows, or,. as stated by 2 Wigmore on Evidence, Section 988:

"There must be no question as to the *fact of the misconduct*, or the rule against particular facts would be violated; and it is this distinction that the courts are constantly obliged .to enforce."

Some of the questions asked by the prosecution herein impinge on this rule; but the most serious complaint made about this matter is not so much as to the infraction of this rule, but as to adverse rulings on objection to the conduct of the prosecuting attorney, who persisted in asking questions along these lines in spite of the fact that the court ruled against him. We are unable to understand why prosecuting attorneys persist in thus infracting the well established rules of practice. This court has repeatedly warned prosecutors about these dangers, and it semes rather strange that, in spite of these warnings, prosecutors persist in this practice. However, we presume that the field is so attractive that they cannot refrain from browsing therein, if possible. The result, under such circumstances, is always the same as it is in this case. It puts into the record a reversible error, and necessitates on our part the reversal of the case, where, if more careful attention had been given to the well settled rule, such action here would be unnecessary. This is made more flagrant in the present case than usual, because, in the argument to the jury, the prosecuting attorney, in spite of the adverse rulings of the court, said, among other things:

3. CRIMINAL LAW: new trial: persistent offer of incompetent testimony.

"I have no apology to offer for the examination of the witness for the defense in regard to character * * * I make no apology for any question that I asked any witness. * * * I had a right to ask any question which came into my mind which bore on the good character of the man; the good or bad character from the standpoint of morality,—moral conduct,—and I did, so."

It is apparent in this case, as in most such cases, that the prosecution realized that the matters about which they were inquiring would fall as a subtle poison against the defendant in the

minds of the jury; and while they were not able to get the testimony into the case, except in an inferential way, they realized the advantage of such inference, and sought to avail themselves of it. Without now stopping to quote from the cases, we hoped we had settled this question in the cases of *State v. Scott,* 194 Iowa 777; *State v. Moon,* 167 Iowa 26; *State v. Roscum,* 119 Iowa 330; *State v. Kimes,* 152 Iowa 240, and the cases therein cited. We hold this conduct reversible and prejudicial error.

Several complaints are lodged against the arguments made to the jury by the prosecuting attorney. Some of them infringe the rule; but, since they have been called to the attention of the prosecution, we are sure they will not occur again on the retrial of the case, and we give no further attention to them here.

One other important question is left in the case, which involves an instruction. To the understanding of the objection lodged against the instruction, it will be necessary to refer to other instructions.

Instruction 5 tells the jury:

"In order to establish the crime charged in the indictment, the State must show each and all of the following material matters alleged in said indictment, by the evidence beyond all reasonable doubt."

Then follow the elements constituting the crime charged in the indictment. There is no general instruction of any kind on reasonable doubt.

Instruction 15, being the one under assault, reads as follows:

"The indictment in this case charges the defendant with the crime of assault with intent to commit rape; but this charge also includes within it two lesser offenses,—namely, assault and

4. CRIMINAL LAW: battery, and assault. Under the indictment,
included of-      the defendant may be convicted of assault
fenses: reason-
able doubt.     with intent to commit rape, or assault and battery, or assault, if the evidence is such as to warrant such conviction under the instructions given you."

Instruction 16 is thus worded:

"If you fail to find the defendant guilty of the crime charged in the indictment,—that is, assault with intent to commit rape,—you should then proceed to determine whether or not, under the evidence, he is guilty of either of said included

offenses: that is, assault and battery, or assault."

Then follows the definition of the terms "assault" and "assault and battery."

This is all that is said in the instructions at any place with reference to these two included offenses; and, aside from an attempted definition of "reasonable doubt," nothing further is said about "reasonable doubt."

Section 5377 of the Code of Iowa, 1897, provides:

"Where there is a reasonable doubt of the degree of the offense of which the defendant is proven to be guilty, he shall only be convicted of the lower degree."

The substance of this section of the statute was called to the attention of the court by request for instruction on this line, but was wholly ignored by the court, and no instruction was given on this proposition. This being statutory, there can be no escape from the proposition that it was error for the court to refuse to instruct as requested. In other words, these two offenses were included in the one charged in the indictment. The jury should have been instructed that they could only convict on the one of which they had no reasonable doubt; but no reference is made in the instructions as to reasonable doubt in connection with these included offenses. The court should have instructed on the line requested by the defendant, and a failure so to do is error. As sustaining this rule, see *State v. Heft,* 148 Iowa 617; *State v. Neis,* 68 Iowa 469; *State v. Jay,* 57 Iowa 164; *State v. Walters,* 45 Iowa 389.

Objection is lodged against the instruction defining "reasonable doubt," in this case; and while this instruction is of doubtful validity, we do not now pass upon the same, but suggest that, in the retrial of the case, there are numerous instructions on this question that have been fully approved by this court.

Some other matters have had attention by counsel in the case; but, as they are not likely to occur in a retrial of the case, we give them no further attention.

For the errors herein set out, the case is reversed.—*Reversed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.