STATE OF IOWA, appellee, v. G. J. LEUTY, appellant.

No. 48745.

(Reported in 73 N.W.2d 64)

NOVEMBER 15, 1955.

Chas. W. Bowers, of Des Moines, and N. D. Shinn, of Knoxville, for appellant.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, of Des Moines, Bert A. Bandstra, Marion County Attorney, and E. Raymond Mick, Special Assistant County Attorney, of Knoxville, for appellee.

SMITH, J.—Defendant is charged with the revolting crime of incest alleged to have been committed with his own 12-year-old daughter Maxine, on or about August 25, 1954. He is an osteopathic physician, age 34. He and his wife, Martha (30), have four children, the daughter, Maxine, and three boys, ages respectively 11, 4 and 3. They had been married nearly 14 years.

They live in Knoxville, Marion County, near which county seat the defendant was born and in which he has lived all his life except when away in school or in military training. His business office and laboratory are on the first floor of the building it occupies and his consultation room, medical library, telephone, and insurance records are downstairs.

It is in this downstairs room the daughter claims the crime was committed. She was at the time helping in the office. She testifies her father had committed similar acts at various previous times, the first, when she was in the third grade. She even says he "molested" her once when she was in the first grade.

It is unnecessary to recite the details as no claim is made on appeal that the evidence was insufficient to generate a jury question. In view of the errors alleged, however, it is proper to point out how fragile was the proof to support conviction. The case was tried in Warren County on change of venue from Marion County.

As is probably true in most cases of this character the testimony of the child was the only real proof that defendant committed the crime, if one was committed. While such corroboration is by statute required in cases involving some sexual crimes

there is no such statutory requirement here. As to whether any crime was committed, the State produced two medical witnesses who examined the child shortly after the alleged commission of the crime. The most that was elicited from them was that "she *could* have had sexual intercourse." Both said she was abnormally sensitive to the pelvic examination and they agreed in saying in effect that they found no proof that she had had sexual intercourse. Both said in substance that while the hymen was absent, it occasionally happens that the hymen is missing, is never present, or it may be ruptured in ways other than by sexual intercourse—as the result of some accident or engaging in certain sports "like riding a bicycle."

A later examination by two medical witnesses on behalf of defendant went further and expressed the unqualified opinion it would not have been possible "for a normal male adult to have had sexual intercourse with Maxine Leuty." One of them had examined defendant and found him normal.

We are not assuming the function of the jury, but merely saying it is a case in which the danger of passion and prejudice was more probable than in most.

The appeal is based on claimed errors occurring during the trial. Various errors are assigned. The most serious ones grow out of the State's alleged attempts to get before the jury prejudicial testimony purporting to show acts and conduct of defendant unrelated to the alleged transactions charged here. The trial court sustained objections in most instances but defendant contends the purpose was accomplished and the damage done by persistent suggestion.

A motion to direct verdict for defendant was overruled, the jury returned a verdict of guilty, judgment has been rendered on it, and defendant appeals.

I. The State put on the witness stand a thirteen-year-old girl who had also worked in defendant's office, and after some preliminary questions she was asked: "On the last day that you worked there did G. J. Leuty do anything?" Over objections the witness was permitted to answer "Yes." She was next, over objection, permitted to testify "he did something to her" that day.

The next question inquired: "What did G. J. Leuty do to you?" The objection following was substantially the same as had been urged to the preceding questions and overruled: "That is objected to as incompetent, irrelevant, and immaterial and an attempt to prove transactions with other persons at different times than those alleged in the indictment and highly prejudicial."

The following proceedings resulted: "The Court: The objection should be sustained. This, if anything, would be a completely separate transaction."

At this point the county attorney belatedly suggested taking the matter up in the absence of the jury. The jurors were retired from the courtroom and the county attorney in their absence offered to show by the witness "that on the said date * * * being the last day on which she worked for G. J. Leuty * * * at his instance and request and for the purpose of undergoing treatment he had her disrobe and lie on the treatment table * * * and over her objection and against her will had sexual intercourse with her."

The defense renewed objection and urged it was "an attempt to show offenses against females other than the prosecutrix and wholly disconnected with the transaction on trial."

Defendant's attorney offered to submit authorities in support of the objection. The county attorney, however, did not even wish to be heard and the court sustained the objection, saying in part: "* * * while it is proper to show other acts with relation to this particular complaining witness, * * * it is not proper to show acts of separate and distinct crimes with other persons * * *."

Thereafter the two preceding questions were on motion stricken, the county attorney saying he had no objection. The court however overruled the motion to strike the preliminary testimony of the witness showing her employment by defendant in his office.

When the jury returned to the courtroom the court instructed it to disregard the questions and answers "to the effect that Doctor Leuty did something to her" (the witness).

It can hardly be doubted the members of the jury, or at

least some of them, understood the purpose of placing this witness on the stand, even though they did not actually hear what transpired in their absence from the courtroom. The county attorney manifested no great belief in the admissibility of the offered testimony, possibly considering its purpose had been accomplished without the risk of its actual admission. The rule establishing its inadmissibility is almost "hornbook" law. It is not new. More than fifty years ago this court said it was "well understood." State v. Vance, 119 Iowa 685, 94 N.W. 204. It has been reaffirmed consistently since. See State v. Clay, 220 Iowa 1191, 1197, 264 N.W. 77; State v. Crabbe, 200 Iowa 317, 319, 204 N.W. 272; State v. Porter, 229 Iowa 882, 885, 294 N.W. 898. The present case does not come within any of the exceptions to the rule.

We suggest that in such cases the prosecutor should make his entire record in the jury's absence and avoid the danger of reversible error, assuming he has some theory upon which he thinks the testimony proper.

II. The other two assigned errors relate to alleged attempts to get improper matters before the jury by cross-examination of defendant and his wife.

Defendant, in order to show hostility of his daughter toward her father growing out of a separation suit brought by her mother against him which he claimed was fomented or encouraged by relatives, testified: "and as a result my daughter became definitely hostile towards me." The basis or cause of the separation suit was not gone into. The sole purpose in referring to it was clearly to show the daughter's hostility. The separate maintenance case had been dismissed and the parties had become "fully reconciled."

On cross-examination, however, defendant was asked: "The real reason your wife filed the separate-maintenance action was because you were having an affair with another woman?" The trial court sustained appropriate objections.

Defendant was then asked whether he took any pictures when he went to California "this summer." Objection was sustained. Then followed: "Did you go to California in June 1954? * * * Q. Who accompanied you on that trip?" The court sus-

tained objection and the subject was not pursued in that examination.

However the subject was resumed in the cross-examination of Mrs. Leuty. As a witness for defendant she too testified on direct examination: "When Doctor Leuty and I were having domestic difficulties in July, Maxine became hostile towards him, resentful of any authority he might have over her, reluctant to mind."

On cross-examination she testified she had consented to the daughter helping in her father's office. She was asked: "At that time isn't it true that you knew that he was committing immoral acts with other girls?" The court overruled an objection that it was not proper cross-examination and she diplomatically answered: "As far as that is concerned, sir, I have no proof of anything."

She was again asked: "The main basis, wasn't it, of your difficulty with him at that time was that he was committing immoral acts with another girl?" The court, over objection that it was not proper cross-examination, repetition and prejudicial, ruled: "Sustained *on the basis that it is repetition.*" The jury was thus left to assume the matter inquired about was proper for its consideration. The prejudicial error here seems clear.

Later in her cross-examination she was asked as to having had conversation with a young girl, Marjorie Wagner, who had worked in her husband's office. Over objection she answered "No" but admitted talking with Marjorie's mother. Then followed: "Q. And didn't you suspect that your husband was having an affair with this girl?" It was objected to as "not proper cross-examination and highly prejudicial" and as calling for hearsay and a conclusion of the witness. "The Court: Overruled. Both sides have gone into this separate maintenance and so many things that it is hard to draw the line."

There followed a colloquy between the court and defendant counsel. The latter pointed out that the defense had not gone into the merits of the separate-maintenance suit and denied having brought it up: "The State was the one that brought" it up; to which the court responded: "There was no objection, and you went into it with the defendant. Overruled. Answer the question." There was an exception and the record continues:

"A. If I suspected, it was purely on rumors. Q. (By Mr. Herrick) Didn't you have some letters that your husband had written to this girl? Mr. Bowers: That is objected to as not proper cross-examination, irrelevant, immaterial and wholly collateral to any issue in this case. * * * The Court: Overruled. A. There was one letter, it had never been mailed. Q. As a matter of fact, you called your sister, Betty Yates, to come from Kansas? Mr. Bowers: That is objected to as calling for hearsay testimony and not proper cross-examination. The Court: Sustained."

This all referred to a supposed transaction between defendant and another girl. It was clearly a violation of the rule we have discussed under Division I but was all permitted to go to the jury except as to the last question. We find no justification for it in the direct examination of the witness or her passing reference to "domestic difficulties", nor in the defendant's failure to object when those "difficulties" were first brought into the record by the State.

The State's argument that Code section 781.13, Iowa Code, 1954, places a defendant, when he becomes a witness, "on the same footing as any other witness" does not answer the criticism here. Neither defendant nor his wife was being examined "in respect to memory, history, motives, or matters affecting credibility" as was held in State v. Williams, 238 Iowa 838, 850, 28 N.W.2d 514, 521, cited by the State.

The cited statute expressly limits the cross-examination of a defendant "to the matters testified to in the examination in chief" and it is only when the cross-examination is so limited that he "may be required to make disclosures which tend to discredit or incriminate him" as argued by the State.

The cross-examination of Mrs. Leuty, permitted by the court, did not of course have any connection with her qualifications as a witness, or the truth of what she had testified to on direct. Its purpose was not to discredit her, but her husband, and could only result in implanting in the minds of the jurors suspicions as to prejudicial matters that could not be directly shown.

III. The error in these various attempts (some successful) to get into the record, by indirection, matter that was clearly incompetent and prejudicial must be conceded. State v. Van Hoozer, 192 Iowa 818, 822, 185 N.W. 588; State v. Neifert, 206 Iowa 384, 220 N.W. 32; State v. Weaver, 182 Iowa 921, 927, 166 N.W. 379; State v. Comes, 245 Iowa 485, 491, 492, 62 N.W.2d 753.

The attorney for the State must be held to have known the rule making evidence of other similar transactions with other persons inadmissible. At least, existence of prejudicial error does not depend on any imputation of actual bad faith on the part of the prosecutor. Nor is it rendered less erroneous or less prejudicial by his good faith. The result is the same in either case. Defendant has not had the fair, impersonal trial the law attempts to guarantee to one charged with crime.

He may or may not be guilty. With that question we have no judicial concern. Our duty is to insist on procedure and observance of rules best adapted to provide him what the law promises, a fair and impartial trial. The judgment is reversed and new trial granted.—Reversed.

OLIVER, C. J., and BLISS, GARFIELD, WENNERSTRUM, THOMPSON, and LARSON, JJ., concur.

HAYS and PETERSON, JJ., take no part.