STATE OF IOWA, appellee, v. DONALD GUY TOLSON, appellant.

No. 49075.

(Reported in 82 N.W.2d 105)

APRIL 3, 1957.

Charles W. Bowers and J. B. Morris, Jr., both of Des Moines, for appellant.

Norman A. Erbe, Attorney General, Freeman H. Forrest, Assistant Attorney General, Ray Hanrahan, County Attorney, and Luther Glanton, Jr., Assistant County Attorney, for appellee.

THOMPSON, J.—It is sometimes said that error "crept" into the trial of a lawsuit. Not so in the case at bar. It marched in like an army with banners, and trumpets. It was escorted, and emphasized, and aggravated by the attorney for the State.

A prosecuting attorney should use his best efforts to represent the State, vigorously and forcefully, in presenting its case within the bounds of proper legal procedure. He owes a second duty, of no less importance, to see that the accused has a fair trial. He is an officer of the court and must observe the requirements of due process of law. We have commented upon

this duty many times and have been compelled to reverse many cases because it was disregarded. State v. Leuty, 247 Iowa 251, 257, 258, 73 N.W.2d 64, 69; State v. Comes, 245 Iowa 485, 491, 492, 62 N.W.2d 753, and cases cited; State v. Weaver, 182 Iowa 921, 927, 166 N.W. 379. The rights of the State and of the defendant are equal in that each is entitled to a fair trial under established rules. This should be kept in mind by counsel representing the State at every stage of the proceedings; but too often, as in the instant case, it is not.

Our primary concern here is whether the defendant had a fair trial, as measured by proper legal procedures. The crime charged against the defendant is a detestable one, which should be promptly punished in accordance with the prescribed penalties when, but only when, the accused has been determined to be guilty after he has had his day in court. But he has not had this day when the record shows such repeated interjection of prejudicial error through the misconduct of the prosecuting attorney as does the one before us. We have no alternative but to reverse.

I.  Some detail as to what transpired upon the trial will make clear the reason for the foregoing discussion. The defendant was indicted for illegal possession and control of heroin. Apparently the date of the alleged offense was December 6, 1955. On the evening of this day certain police officers of the City of Des Moines entered the small hotel in Des Moines which the defendant owned and operated and conducted a search of his person and of the room in which he was found. The search disclosed a considerable quantity of a drug which the evidence shows was heroin. It was found in the defendant's pockets, in two packages. At the time the officers entered the defendant was playing cards with one Diggs, and it is his testimony that when the officers appeared Diggs handed him the two packages, and that he had no knowledge of what they contained. Although a motion for a peremptory verdict was made and overruled, it is not urged on this appeal that there was not a jury question on the matter of illegal possession and control.

But early in the case the prosecuting attorney began an attempt to interject into the case evidence of several earlier raids

made by the police and Federal officers upon the hotel premises of the defendant. We have said over and over again that evidence of other and unrelated offenses is incompetent, with certain exceptions not material here. State v. Leuty, supra, at pages 257, 258 of 247 Iowa, page 69 of 73 N.W.2d, and cases cited; State v. Moon, 167 Iowa 26, 40, 148 N.W. 1001, 1006; State v. Vance, 119 Iowa 685, 94 N.W. 204. In State v. Van Hoozer, 192 Iowa 818, 822, 185 N.W. 588, 589, we said: "Time and again we have declared that proof of other crimes than the one with which a defendant is charged is not admissible against him." We have said substantially the same thing many times since.

It should be noted also that while the evidence of the previous raids, excluded on objection of the defendant many times by the experienced trial court, finally got into the record, it still fell short of showing any previous crimes. Apparently nothing was found in the earlier searches; at least no charge was filed as a result of any of them. But the error was still there. It will not do to say that no previous crimes were shown; there was a showing of a persistent belief on the part of the police and Federal agents that the defendant was in some manner violating the law. Since he was charged with a violation of the narcotics law, the inference would be strong that he was under serious suspicion of having narcotics in his hotel at many previous times. In fact, the prosecutor's questions on cross-examination made it clear that he was inquiring about raids by "narcotic agents" and "to discover your selling of narcotics."

Each of two police officers who took part in the search on December 6, 1955, was asked, in substance, whether he had had occasion to go to the hotel on previous occasions. Upon objection being made, the prosecuting attorney said this was for the purpose of showing that the officers had knowledge of the control and operation of the hotel by the defendant, and upon this theory answers were admitted, each officer saying he had been at the hotel at earlier times. Perhaps this examination could be justified if it was in good faith for the purpose stated. But it was followed by further questions whose intent is clear and whose strongly prejudicial and improper effect cannot be denied.

The defendant as a witness in his own behalf said that he was not a user of narcotics and did not sell them. He testified that he did not know the contents of the two packages when handed to him by Diggs. With this as a supposed foundation, he was asked on cross-examination: "Isn't it a fact that the police officers have been to your place on numerous occasions and the narcotics officers have been to your place on numerous occasions to discover your selling of narcotics? A. No. They have not." An objection was made but not ruled upon. Then came another question: "Are you saying now that they have never been there; the narcotics agents and the FBI have never searched your hotel for the purpose of finding narcotics?" Objection was sustained. Substantially the same question was asked on cross-examination of defendant's witness Diggs, with objection again sustained.

Not satisfied with leaving the matter as it was, with the jury in all probability drawing the desired inference, the prosecutor crowned his edifice of error by recalling one of the police officers on rebuttal and delving deeply into the question of previous raids; this time with the permission of the court. After the officer had stated that he knew the defendant before December 6, 1955, he was asked: "Q. And state whether or not prior to that date you had occasion to raid the G & W Hotel, owned and operated by Mr. Tolson, for the illegal possession of narcotics?" Proper and timely objection being made, this appears: "Mr. Glanton, Jr.: 'Your Honor, if you recall on direct examination this gentleman stated on direct examination that he did not use nor did he sell narcotics, and I asked him was his place ever raided for narcotics by the State agents and he said "No". And I have a right to rebut that.'" The objection was then overruled, and the witness answered: "A. We have raided it a number of times."

It should be noted that on at least two occasions, following the asking of prejudicial questions or the making of prejudicial statements by the attorney for the State, the defendant's counsel moved for a mistrial, which was denied. The trial court did keep out the objectionable testimony as to previous raids until it was offered as rebuttal by the State. Here it was apparently misled by the specious claim of the prosecution that it

was entitled to rebut the defendant's statement that he did not use or sell narcotics. So far as this statement was a denial of possession and control on the date charged in the indictment, it controverted the showing made by the State on its case-in-chief. No doubt the State was entitled to rebut it also, if it had material evidence applying to December 6, 1955. But it was not entitled to rebut as to whether the defendant had committed other offenses—that is, illegal possession, or sale, on other dates. True, the defendant's statement that he did not use or sell narcotics was broad enough to constitute a denial as to any dates. But it is settled that a witness may not be impeached or discredited on immaterial matters. State v. Falconer, 70 Iowa 416, 424, 30 N.W. 655, 659. Exactly in point is the case of Trujillo v. People, 116 Colo. 157, 178 P.2d 942, 943. Here one Vigil, with other defendants, was accused of riot. He testified that he struck no one on the date in question. The trial court had previously limited the evidence to what transpired at a certain place. The State in rebuttal was permitted to introduce the testimony of a witness that Vigil had struck her at another place. The case was reversed as to Vigil. To the same effect is People v. Burness, 53 Cal. App.2d 214, 127 P.2d 623, 625, 626. It will be noted that in each of the three cases last cited the matter rebutted by the State was brought out by the defendant in his main case rather than upon cross-examination; but it was held error to permit impeachment or discrediting of the witness because the matter was immaterial.

In fact, even if the rule were otherwise and the defendant might be contradicted on immaterial matters, the evidence introduced by the State falls far short of doing so. We have pointed out that there is no claim that any narcotics were found in the preceding raids; one of the police officers said no charges were filed. So we have only a record that for some unspecified reason the defendant was subjected to searches by police and Federal officers who were looking for illegally held narcotics. The implication is strong that these officers thought there was a good reason for these raids, and a jury would be almost certain to draw that inference. But nothing was found; which means, that if testimony such as this were permitted, the defendant would be tried, not upon a record of previous crimes, but upon

mere suspicion thereof. The error in persistently asking the questions about these raids upon cross-examination of the defendant and of Diggs, even though objection was sustained, would probably require a reversal; it was made certain by the admission of the rebuttal testimony concerning them.

■ II. The witness Diggs, called by the defendant, testified that he handed the packages of heroin to Tolson when he saw the officers coming into the hotel. Upon cross-examination he was asked why he did this, and he answered that the defendant was a reputable businessman and he thought he would not be searched. After objection had been sustained to the question whether the witness knew that the hotel had been searched for narcotics many times, the prosecuting attorney asked this question: "Q. Now, Mr. Diggs, haven't you come into my office on the fourth floor on many occasions and telling me things about Mr. Tolson that is far different than what you are testifying here on this witness stand?" Objection was sustained. An offer of proof was then made in the absence of the jury, to which objection was sustained. But in spite of this, the attempt to show the matter of Diggs' alleged statements concerning the defendant was persisted in by the prosecuting attorney. Police Captain Volz, called in rebuttal, was asked whether he had talked with Diggs about the reputation of Tolson for the peddling or possession of narcotics, and objection was sustained. Then came this: "Q. Mr. Diggs stated here from the witness stand that Mr. Tolson was a reputable businessman. Did Mr. Diggs ever say anything to you that would be at war with that statement that was made here from the witness stand concerning the reputation of Mr. Tolson?" Objection being made, we find this record: "Mr. Glanton, Jr.: 'Your Honor, the purpose of this question is to impeach the testimony of Mr. Diggs who stated that Mr. Tolson was a man of a reputable business reputation.'" The court then denied the objection, and the witness answered: "He has." But objection was sustained to the following question as to what Diggs had said.

■ It is evident the attempt was not so much to contradict Diggs as it was to harm the defendant by showing that Diggs had made statements concerning Tolson's reputation for illegal han-

dling of narcotics. Diggs was not called as a character or reputation witness. His statement that the defendant was a reputable businessman was brought out on cross-examination. The defendant put his general reputation for moral character in issue for the purpose of testing his credibility by taking the witness stand. Section 622.18, Code of 1954; State v. Alberts, 241 Iowa 1000, 1001, 1002, 43 N.W.2d 703, 704, 705, and cases cited. But his reputation as a businessman was not in issue. A "reputable businessman" is, presumably, one who has the reputation of dealing honestly and fairly in his business transactions. We have said in State v. Boston, 233 Iowa 1249, 1253, 11 N.W.2d 407, 409: "A party is not permitted on cross-examination to bring out improper and immaterial matter and then show its falsity." See also State v. Murray, 238 Iowa 861, 865, 28 N.W.2d 498. We have also announced the rule that "a witness who testifies to reputation only, as distinguished from character, should not be cross-examined as to conduct of the party within the personal knowledge of the witness." State v. Keul, 233 Iowa 852, 857, 5 N.W.2d 849, 853, citing State v. Poston, 199 Iowa 1073, 1075, 203 N.W. 257, 258. The persistent efforts of the prosecuting attorney to delve into this matter, in spite of the repeated adverse rulings of the court, constituted prejudicial misconduct which in itself would require a reversal. See State v. Poston, supra.

It is to be noted that the questions posed by the State fixed no time; and that the offer of proof made when objections to the line of questioning indicated above in this division were sustained shows that what was expected to be elicited was that Diggs had told the prosecutor that Tolson was at an undisclosed time a "peddler and runner of dope"; that Diggs knew Tolson had been arrested in 1952 and fined for running a gambling house; in 1951 he was arrested and fined for disturbing the peace and quiet; and that on numerous occasions his place had been raided and searched by police and State and Federal narcotics agents "because it was rumored that Mr. Tolson was a runner and peddler of narcotic drugs." This showing clearly illustrates the vice in the proposed line of questioning.

III. Upon the cross-examination of the defendant another incident transpired which must be noticed. We quote the record:

"Q. You have seen dope on many occasions? A. I have not. Q. Haven't you been around your sister, Mr. Tolson, on many occasions? A. Yes, sure. Q. And wasn't your sister on the same night arrested for having possession of narcotics?"

No comment upon this type of examination is needed. It is self-condemning. Objection was made and promptly sustained. A motion for a mistrial was then made and denied. It seems likely that the effects of the poison interjected by the question alone would be difficult to remove, and the motion for a mistrial was well founded. It is true a question propounded in good faith, even though improper, is not always prejudicial misconduct. But here it is difficult to conceive that a lawyer competent to handle the prosecution of a criminal case would not realize the gross impropriety of the question asked. See State v. Neifert, 206 Iowa 384, 385 to 389 inc., 220 N.W. 32, 33, 34 inc. Whether we would reverse on this point alone we need not determine since other prejudicial errors have been pointed out above. We content ourselves with the express hope that similar tactics will not be adopted upon a retrial.

IV. Error is predicated upon the admission of testimony of the value of the narcotics found. While we think this immaterial to the issue, we would not reverse upon this ground alone.

V. The appellant also complains of the refusal of the trial court to give his requested Instruction No. 1. This would have told the jury that knowledge by the defendant of the fact that the packages handed to him by Diggs contained narcotics must be proven beyond a reasonable doubt before he could be convicted. The substance of this was given in the court's Instructions Nos. 6 and 7. We find no error here.—Reversed.

BLISS, C. J., and GARFIELD, HAYS, OLIVER, PETERSON, SMITH, and WENNERSTRUM, JJ., concur.

LARSON, J., dissents.

LARSON, J. (dissenting)—I am unable to agree with the majority herein. It is true the case was not well presented by the State's attorney in the court below, but I am inclined to

believe the matters complained of were due to a lack of careful preparation and were not intentional departures from the well-established rules of evidence. Nevertheless, I feel the trial court amply protected defendant and no prejudicial error sufficient to reverse is evident. Considerable latitude is extended the trial court in passing on questions of impeachment when a defendant takes the stand in his own behalf, and I cannot find herein any serious abuse of that discretion. In view of the seriousness of the crime charged and the clear guilt of the defendant, I feel we should be most reluctant to chastise the State's attorney for his shortcomings and reverse upon the rather technical grounds set forth in the majority opinion. I would affirm.