STATE of Iowa, Appellee,

v.

Lewis LEVY, Appellant.

No. 52602.

Supreme Court of Iowa.

July 18, 1968.

Henry T. McKnight and Louis A. Lavorato, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., James C. Sell, Asst. Atty. Gen., and Ray A. Fenton, County Atty., Des Moines, for appellee.

RAWLINGS, Justice.

Charged by indictment with first degree murder, defendant entered a not guilty plea, trial jury returned verdict finding him guilty of crime charged in the second degree, judgment was entered, and he appeals. We reverse.

The record discloses defendant and Karen Staver entered into a common-law marriage about May 21, 1965. He entered military service January 10, 1966, and at time here concerned was home on leave.

While defendant was absent, in the armed forces, Karen and their infant child roomed with Mr. and Mrs. Joseph Ayala. Also in the home was a son, Benjamin Ayala.

During leave from the service defendant stayed with a brother, Bob Levy.

In the forenoon, March 13, 1966, he engaged in target practice at a rifle range, then returned to Bob's apartment. His revolver and a gun belt were there placed on a chest of drawers in the bedroom.

Using Bob's Chevrolet Super Sport Convertible he went to the Ayala home, later leaving with Karen and the baby.

Sometime between 9:00 and 9:25 P.M. accused returned with his wife and child to the Ayala second floor apartment. Benjamin was there.

Defendant and Karen then went downstairs to the front porch, leaving their child in the apartment. Soon Benjamin joined them.

Shortly thereafter defendant departed, went to the car parked in an alley, and upon leaving passed the Ayala apartment building. A shot was fired from an automobile described by one witness as a black Chevrolet, which sped away.

Karen ran upstairs, the Ayalas came down, found Benjamin lying at the bottom of the stairs, and carried him to their quarters. He died of a gunshot wound.

The police were called and several officers responded.

The Polk County Medical Examiner removed a bullet from the body and turned it over to a ballistics expert in the Department of Criminal Investigation.

Policemen Tinker and Slater went to Bob Levy's apartment. In response to a knock on the door they were told to enter by Charles Siever, a roomer in the home. They opened the door and went in. Defendant came out of a bedroom, identified himself, and was told to get his coat and accompany the officers downstairs. He went back into the bedroom, followed by the two policemen. They there saw a shotgun, asked defendant if he had any other weapons, and he pointed to the revolver wrapped in a cartridge belt on top of the chest of drawers. The police took possession of the gun and belt. Upon leaving the apartment defendant was told he need say nothing and that anything said could be used against him. He was taken to the police station, and shortly after arrival talked to an attorney. Other relevant evidence will be later considered as it relates to issues presented on appeal.

Defendant contends reversible error resulted from, (1) admission of certain exhibits into evidence; (2) misconduct on the part of the assistant county attorney during prosecution of the case; and (3) refusal of defendant's requested jury instruction relative to character evidence. They will not necessarily be considered in the order presented.

I. Several days prior to commencement of trial defendant and Karen were officially married. This is conceded by the State.

In the course of investigation a written statement was given by Karen.

During his opening statement the prosecutor referred to questioning by officers of the young lady involved in the case. Defense counsel immediately objected, requesting a mistrial if the assistant county attorney persisted in his attempts to infer withholding of information by defendant's wife. The jury was then advised by the court to disregard any statement made relative to information given police by Mrs. Levy. The assistant county attorney was also told he would not be allowed to proceed beyond a showing police officers had talked to Karen.

When Mrs. Ayala was testifying, the prosecutor inquired as to what Karen said to her after the shooting. Upon objection interposed the prosecutor was again cautioned by the court.

However, Officer Leaming, as a witness for the State, was later shown a written statement purportedly given by Karen and asked to identify it. When defense counsel objected the State's attorney admitted he had no intention of offering the exhibit in evidence.

Following this the prosecution inquired of defendant on cross-examination whether he knew where his wife was living prior to June 1964. When objection was voiced the State's attorney remarked, "Well, we will get to that when she takes the stand then." Trial court promptly admonished the jury to disregard this statement.

Additionally, despite repeated objections and attendant admonitions by trial court, the prosecutor during cross-examination of four defense witnesses attempted to invade the husband-wife privilege, thus compelling defense counsel in presence of the jury to constantly, in effect, reassert the statutory testimonial marital prerogative.

Thereafter on rebuttal the State called Mrs. Ayala. Among other things she was asked what Karen said when she came upstairs after the shooting. The question was withdrawn. But shortly the witness was asked if the police were told she had said to Karen, "Either you tell them or I will." Objection was sustained and there followed this question and answer: "Q. What did you tell the officers or tell Karen Staver in the presence of the officers? A. I told her either she'd tell the officer who did it or else I would."

Then, in opening jury argument the assistant county attorney said: "This is a circumstantial case and the Court is going to tell you that most—or there is an awful lot of circumstantial cases. There are—most of the crimes are committed not in the presence of eye witnesses, even though there is an indication that this one was, thus forcing the state to try this case on the basis of the rules that existed prior to the evolution of the legal revolution that we're having at the present time. And I'm saying the rules just haven't caught up with the main trend. I don't object to this because I get my—I get my duty done to you and to the citizens here when I do the best I can what I have got admissible, and I'm not apologizing to a single one of you. I did the best I could to win my fight and I lost it and I'm sorry.

"Because I for one believe that the jury, if they are to determine the truth, should have the truth before them, and I don't know how the law can be so anarchistic and archaic as to force us to try the case on—"

When told by trial court, on objection asserted, to change the subject there followed this remark, "And again, like I say, trying this case with one arm tied behind my back—" Defense counsel objected and trial court again advised the subject be changed.

Then came this statement by the prosecutor: "* * * we're trying this case under the rules as they exist today, and the law and the rules of evidence that apply to this particular situation. Like I say, I fought and I lost and I'm not bitter about it and I think the Court was right, as the law stands today.

"If you find that he had the gun in the car at the time he took her home and fired impulsively, it's murder to [sic]. But if you find and if you feel that because of the absence of some of the testimony that may have at one time—"

Objection and another admonition brought forth this remark by the State's attorney: "Then again if you find that the State has failed to produce for whatever reason—how did you like that—some of the evidence—"

Finally, not content with his prior abortive efforts, the assistant county attorney in course of rebuttal argument, said, "All right. This is a murder case and I'm without a witness. I'm short one. There is one person who could have told—"

When stopped from proceeding, the prosecutor asked if defense counsel was suggesting Ben Ayala was still alive. Immediately thereafter the assistant county attorney said, "At least to Ben Ayala. But now this particular situation is true in every murder case. We have one witness who knows what happened that is not available to tell you, at least one."

Other trial incidents going to conduct of the county attorney's assistant will be later discussed.

Section 622.7, Code, 1966, provides in part:

"*Husband or wife as witness.* Neither the husband nor wife shall in any case be a witness against the other, except:

"1. \* \* \* \* \* \* \* \* \* \*

"2. In a civil action or proceeding one against the other, \* \* \*"

There is no reason to believe the attorney prosecuting the case at bar was not fully aware of this statute, and if he knew not of it when trial commenced, defense counsel and trial court promptly alerted him to its existence.

Despite that fact he repetitiously sought to impress upon the minds of the jurors, defendant's wife could reveal vital information if allowed to do so. This was aggravated by continuous reference to the matter in spite of constant objections by defense counsel and futile admonitions by trial court to desist, even to the point of cautioning a mistrial would be declared if the prosecutor continued in his efforts to abuse the statutory husband-wife privilege. Stated otherwise, the county attorney's assistant repeatedly endeavored by insinuations, inferences and innuendoes, both in presentation of evidence and arguments, to indelibly impress upon the minds of the jurors defendant was designedly suppressing his wife's testimony which, if given, would be damaging to him.

State v. Chrismore, 223 Iowa 957, 274 N.W. 3, deals with an analogous situation. There defendant's wife, called as a witness by the State, was questioned regarding marriage to accused a few days prior to commencement of his trial, necessitating his assertion of the statutory privilege. In reversing a conviction this court said, loc. cit., 223 Iowa 959–961, 274 N.W. 4:

"While we do not attribute to the prosecution in this case the motives ascribed to the state's attorney in the case of Moore v. State of Texas, 45 Tex.Cr.R. 234, 75 S.W. 497, 498, 67 L.R.A. 499, 108 Am.St.Rep. 952, 2 Ann.Cas. 878, the following quotation aptly expresses our views upon the situation before us:

" 'The fact that appellant had married Susie Jones the day prior to his trial was also the subject of legitimate inquiry from proper sources. But here the statute expressly prohibits the use of the wife as a witness against her husband; and this though he had married her for the express purpose of suppressing her testimony against him. Miller v. State, 37 Tex. Crim.Rep. 575, 40 S.W. 313; United States v. White, 4 Utah 499, 11 P. 570. It makes no difference at what time the relation of husband and wife begins. The exclusion of their testimony under our statute, and to

its fullest extent, operates wherever the interests of either are directly concerned (1 Greenleaf, §§ 334, 336), and this although he married the witness after she was placed under process (Pedley v. Wellesley, 3 Car. & P. 558; State v. Armstrong, 4 Minn. 335 [Gil. 251]). And the question of public policy is not an argument to the contrary. Public policy must be in accord with our statutory enactment. When the marriage ceremony is performed, no matter what the motive was or may be, the witness thenceforward becomes the lawful wife of defendant, and is prohibited under our statute from testifying against her husband, except where the offense is by the husband against her person. It will be observed in this case that the county attorney called the witness in behalf of the state, and asked her several questions in regard to the case, when, upon objection by appellant that she was his wife, the court then asked her the question if she was his wife, and, receiving an affirmative reply, excused her from the witness stand. This whole proceeding seems to have been a spectacular performance to force defendant to object to his wife testifying against him, in order to get the benefit of her testimony thus far in aid of the supposition and theory that appellant had married her to suppress her testimony. The point insisted upon by the state in regard to this whole matter of proving the recent marriage of appellant to Susie Jones was to convince the jury, first, that Susie Jones was the only eyewitness to the homicide for which appellant was being tried; second, that he had married her for the express purpose of suppressing her testimony; and, third, her evidence was of a damaging character to him. Any fact drawn from the wife proving, or tending to prove, that appellant had married her for the purpose of suppressing her testimony was directly against him. The county attorney had no right to call her as a witness against him. It is thoroughly demonstrated by the facts that appellant had married her; and, if the court and the county attorney were not satisfied with the statement of appellant that he had married the witness, it was a matter easily ascertained without calling the wife, and the good or bad faith of appellant in marrying her, and whether the court believed what the defendant testified in regard to it, would make no difference. The fact that she was the wife of defendant put the seal upon her lips, and excluded her being called as a witness against him. The fact that appellant had married the witness, and the further fact that it was done for the purpose of suppressing her testimony, were so intimately blended under the peculiar facts that they could not be separated; and the fact that he had married her was one of the main facts relied upon by the state to show appellant's act in what the state contended was suppressing the testimony of the wife. It is well settled in cases of bigamy that the lawful wife cannot be called to prove her marriage with the accused, nor for the purpose of identifying him. Boyd v. State, 33 Tex.Crim.Rep. 470, 26 S.W. 1080, and authorities cited; Law of Evidence, by Burr W. Jones, Vol. 3, § 752, authorities collated in note 1. See, also, section 753, note 18. There is no question of the injurious effect of this action of the county attorney as sustained by the court, because it tended to uphold with fearful effect the contention of the state that by reason of his marriage with the witness the day before his purpose was to suppress her testimony, and that her evidence was of a seriously damaging effect against him. It was admitted upon the theory that it was a suppression of the testimony, and the wife was the most important witness in regard to the killing; and it would seem that the state placed the wife on the stand to get whatever of benefit there could arise from the objection urged by appellant that she was his wife in support of the theory of suppression of evidence.'

"See, also, People v. Trine, 164 Mich. 1, 129 N.W. 3, 6. This comment by the court is pertinent to the matter before us.

" 'The statute prohibits testimony by a wife against a husband without his con-

sent. By calling defendant's wife, he was compelled to assert his nonconsent, which was thereby brought to the attention of the jury, who might naturally draw prejudicial inferences.' "

And the Annotator, 116 A.L.R. 1171, makes this statement: "There are conflicting views as to whether it is proper for counsel to comment on the exercise by the opposing party of a privilege with respect to testimony or the calling of a witness. By what seems to be the better rule, it is held improper for counsel to make such comments."

This latter view was given our approval in Howard v. Porter, 240 Iowa 153, 156–159, 35 N.W.2d 837.

With reference to the foregoing, see also Hawkins v. United States, 358 U.S. 74, 75–83, 79 S.Ct. 136, 137–141, 3 L.Ed.2d 125; State v. Leuty, 247 Iowa 251, 254–255, 73 N.W.2d 64; Johnson v. Kinney, 232 Iowa 1016, 1023–1024, 7 N.W.2d 188, 144 A.L.R. 997; State v. McIntyre, 203 Iowa 451, 457–458, 212 N.W. 757; State v. Poston, 199 Iowa 1073, 1074–1076, 203 N.W. 257; State v. Scott, 194 Iowa 777, 781–784, 190 N.W. 370; State v. Van Hoozer, 192 Iowa 818, 820–823, 185 N.W. 588; State v. Moon, 167 Iowa 26, 38–40, 148 N.W. 1001; State v. Nathoo, 152 Iowa 665, 673–674, 133 N.W. 129; State v. Blydenburg, 135 Iowa 264, 271–272, 112 N.W. 634; Jones on Evidence, Fourth Ed., section 734; 23A C.J.S. Criminal Law § 1099b, page 181; and 53 Am.Jur., Trial, section 482, page 389.

■ It is to us apparent the assistant county attorney's constant knowledgeable abuse of the husband-wife privilege was misconduct of such nature as to constitute error.

■ II. On one occasion, after the jury had been sworn and trial commenced, the assistant county attorney produced and made visible to the jury a so-called "mug shot" of accused. Defense counsel subsequently voiced complaint but requested no court ruling on the matter.

During cross-examination of defendant he stated certain military personnel advised him to fill out his Army records showing marital status as single, then when home on leave to secure a court order, and they would change the records to show he was a married person. At this the assistant county attorney posed the question, "In other words, they ordered you to commit perjury?" Objection was sustained.

Also, while Joseph Ayala, father of deceased, was being questioned by the prosecutor, he was asked, "Do you think your criminal record gives anybody the right to shoot your son?" Defendant's motion for mistrial was overruled, and counsel for the State cautioned by trial court to refrain from similar questions.

The foregoing, standing alone, might not constitute prejudicial misconduct, but should be considered in connection with other trial tactics employed by the State's attorney.

III. The question now presented is whether the prosecutor's misconduct constituted reversible error.

Admittedly all trial tactics on the part of a county attorney, classified as misconduct, are not prejudicial.

In State v. Mercer, Iowa, 154 N.W.2d 140, defendant contended on appeal he had been denied a fair trial because of claimed misconduct by the county attorney in asking three unanswered questions, on cross-examination, of two so-called character witnesses. Finding no reversible error, this court affirmed a conviction, but in so doing said, loc. cit., 154 N.W.2d 143: "Of course we do not hold it is never a clear abuse of discretion for a trial court to rule a fair trial was had where there has been misconduct of the prosecuting attorney. What we do hold, as indicated at the outset, is that this record does not show such an abuse of discretion here." See also

State v. Wallace, 259 Iowa 765, 771–772, 145 N.W.2d 615; State v. Schmidt, 259 Iowa 972, 980–981, 145 N.W.2d 631; State v. Tornquist, 254 Iowa 1135, 1139–1142, 120 N.W.2d 483; and 5 Am.Jur.2d, Appeal and Error, Section 896, page 335.

But in the case at bar our problem is whether repeated misconduct, as demonstrated supra, served to deprive defendant of that fair trial to which he is lawfully entitled.

As best we have been able to determine the State understandably makes little effort to show the prosecutor's conduct was harmless.

Here, as aforesaid, the assistant county attorney persisted in his efforts to inject inflammatory, infectious and prejudicial material into the record despite persistent objections by defense counsel and repeated admonitions by trial court. This was not inadvertent error.

■ Most appropriate at this point is a statement set forth in Viereck v. United States, 318 U.S. 236, 248, 63 S.Ct. 561, 566, 87 L.Ed. 734, 741: " 'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor —indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' "

More than ever before those engaged in the prosecution of criminal cases would do well to heed the foregoing word of caution, heretofore voiced by this court in State v. Tolson, 248 Iowa 733, 734–735, 82 N.W.2d 105; State v. Poston, 199 Iowa 1073, 1075, 203 N.W. 257; and State v. Van Hoozer, 192 Iowa 818, 822, 185 N.W. 588.

IV. We are not here confronted with a challenge as to fair trial under the federal constitutional due process mandate and the rule stated in Chapman v. State of California, 386 U.S. 18, 20–24, 87 S.Ct. 824, 826–828, 17 L.Ed.2d 705. See also Amendments 5, 6, and 14, United States Constitution, and Estes v. State of Texas, 381 U.S. 532, 542–543, 85 S.Ct. 1628, 1632–1633, 14 L.Ed.2d 543.

■ This means the issue as to prejudicial error in trial must here be resolved under common law. Dealing with that subject we have repeatedly held, misconduct on the part of counsel for the State will generally be regarded as harmless unless it results in depriving accused of a fair trial or in a miscarriage of justice. See State v. Mercer, supra, loc. cit., 154 N.W.2d 142, and citations.

On the other hand, if an examination of the record discloses a fair trial has not been had this court will not hestitate to reverse. Section 793.18, Code, 1966; State v. Olson, 260 Iowa 311, 149 N.W.2d 132, 136; and State v. Mabbitt, 257 Iowa 1063, 1066, 135 N.W.2d 525.

■ V. Inherent in section 622.7, Code, 1966, quoted supra, is the unavoidable proviso that no inference of guilt shall arise from failure of one spouse to testify for or against the other. From this it necessarily follows the full protection of the statute is not obtained if silence of a wife is permitted to be construed against the husband.

In the case at hand, as aforesaid, constant questioning of witnesses and remarks by the assistant county attorney compelled repeated objections, in substance nothing more nor less than assertions of the statutory husband-wife privilege, which in turn served to defeat the aims and purposes of the protective cloak afforded by law.

If the prosecution should be permitted to engage in such tactics as were here employed the immunity provided by section 622.7 would be rendered meaningless.

As stated by this court in Johnson v. Kinney, supra, loc. cit., 232 Iowa 1024, 7 N.W.2d 193: "We have said several times that it is reversible error to require a plaintiff on cross-examination to say whether he is willing to waive the privilege which the statute affords. McConnell v. City of Osage, 80 Iowa 293, 303, 45 N. W. 550, 553, 8 L.R.A. 778; Burgess v. Sims Drug Co., 114 Iowa 275, 280, 86 N. W. 307, 54 L.R.A. 364, 89 Am.St.Rep. 359; State v. Booth, 121 Iowa 710, 713, 97 N.W. 74; Donovan v. Donovan, 231 Iowa 14, 17, 300 N.W. 656, 658, 659. A party should not be prejudiced by claiming a right which the law gives him. It is improper to challenge a party in the presence of the jury to waive his legal rights. In re Will of O'Connor, 173 Iowa 318, 328, 155 N.W. 290, Ann.Cas.1918C, 378; 3 Am.Jur. 609, section 1061."

We are satisfied the objectionable performance of the assistant county attorney in trial of the instant case was designed, or in any event served to wrongfully and indelibly implant in the mind of every juror these poisonous conclusions: (1) Defendant married Karen Staver in order to suppress her testimony; (2) it would, if given, be damaging to the accused; and (3) from refusal to waive the husband-wife privilege, inferences prejudicial to defendant must naturally follow. With regard to the foregoing see Howard v. Porter and State v. Chrismore, both supra; San Fratello v. United States (5 Cir.), 340 F.2d 560, 564–567; and State v. Swan, 25 Wash.2d 319, 171 P.2d 222, 226–227.

Other trial tactics by the prosecutor heretofore disclosed, only served to aggravate his constant encroachment upon the statutory marital privilege.

■ We now hold, repeated misconduct by the assistant county attorney so permeated the trial as to create error which can only be classified as prejudicial.

Moreover, it is to us apparent conduct on the part of the assistant county attorney in prosecution of the case was so flagrant as to preclude remedy or cure by any court given admonitions, and served to deprive defendant of a fair trial. See State v. Neifert, 206 Iowa 384, 389, 220 N.W. 32, and State v. Peirce, 178 Iowa 417, 443–444, 159 N.W. 1050. As a result, the conviction cannot be allowed to stand.

In addition to authorities heretofore cited supporting this conclusion, see State v. Leuty, 247 Iowa 251, 255–258, 73 N.W.2d 64; State v. Comes, 245 Iowa 485, 491–493, 62 N.W.2d 753; and State v. Hild, 240 Iowa 1119, 1147–1156, 39 N.W.2d 139.

VI. By virtue of the fact this case must be remanded for new trial, other errors assigned should be considered.

Defendant asserts, inter alia, trial court erred in ultimately admitting in evidence the cartridge belt seized when police officers were in the bedroom with defendant at Bob Levy's apartment.

■ As previously noted entrance to these premises was with consent of a tenant in the home. This was a lawful entry. Ker v. State of California, 374 U.S. 23, 41, 83 S.Ct. 1623, 1634, 10 L.Ed.2d 726; State v. Moore, Iowa, 156 N.W.2d 890, 894; State v. Brant, 260 Iowa 758, 150 N.W.2d 621, 625; State v. Polton, 259 Iowa 435, 440–443, 143 N.W.2d 307; 79 C.J.S. Searches and Seizures § 62, page 816; and 47 Am. Jur., Searches and Seizures, section 72, page 548.

After the officers had gained admittance and entered the bedroom, they saw a shotgun. Defendant was then asked about other weapons. He pointed toward a chest of drawers. Trial court sustained objections relative to both the question put to defendant and his responsive gesture. By virtue of the fact this ruling is not challenged on appeal we accord it no further consideration.

However, a revolver and cartridge belt, in plain view on the chest, were seized by

the policemen. This was constitutionally permissible. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067; Warden Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; and State v. Moore, supra, loc. cit., 156 N.W.2d 892, 894.

Furthermore, the objects so taken were relevant to the issue involved and of sufficient probative value to justify their admission in evidence. As we said in State v. Harless, 249 Iowa 530, 534–535, 86 N. W.2d 210, 213: "Instruments found in the possession of accused which, although not identified as those actually used in committing the crime, are similar in form and character thereto, or which, from the circumstances of their finding justify an inference of the likelihood of their having been so used, are admissible in evidence for the purpose of showing availability to accused of the means of committing the crime in the manner it is shown to have occurred or for the purpose of showing preparation. State v. Bales, 246 Iowa 446, 450–451, 68 N.W.2d 95, 97–98, and citations." See also State v. Ladehoff, 255 Iowa 659, 663–664, 122 N.W.2d 829; State v. Drosos, 253 Iowa 1152, 1159, 114 N.W. 2d 526; State v. Slauson, 249 Iowa 755, 760–761, 88 N.W.2d 806; State v. Williams, 245 Iowa 494, 505, 62 N.W.2d 742; State v. Kehr, 133 Iowa 35, 37, 110 N.W. 149; and 22A C.J.S. Criminal Law § 712, page 956.

■ VII. Defendant also challenges the jury instruction given relative to character testimony presented on his behalf. In this regard he apparently claims presentation of evidence disclosing defendant to be a peaceful, quiet, non-violent person entitled him to an instruction to the effect a man possessing these qualities would not be likely to commit murder, and may be sufficient to generate a reasonable doubt as to guilt.

The self-evident fallacy in defendant's approach lies in the fact it would permit the jury to resolve reasonable doubt on generalized character testimony alone, rather than upon all the evidence, including that relevant to the specific event from which the criminal charge stemmed.

Trial court properly refused to adopt this theory and gave the following instruction:

"You are instructed that evidence as to the character of the defendant as to peacefulness, quietness and non-violence should be considered by you with all of the other evidence in determining the guilt or innocence of the defendant. If you find that the defendant's character as to peacefulness, quietness and non-violence is good, you may consider such evidence in determining whether a man of such good character for peacefulness, quietness and non-violence would be apt to commit the crime of murder.

"If the evidence of such good character as to peacefulness, quietness and non-violence is sufficient, together with all of the other evidence, to generate a reasonable doubt as to the defendant's guilt, he is entitled to an acquittal, even though without such proof of such good character the jury would convict.

"Previous good character as to peacefulness, quietness and non-violence, however, is no defense to a crime actually committed."

That instruction is in accord with our holding in State v. Hodge, 252 Iowa 449, 454–456, 105 N.W.2d 613, and State v. Crisman, 244 Iowa 590, 596–599, 57 N.W. 2d 207. See also State v. Case, 247 Iowa 1019, 1024–1025, 75 N.W.2d 233; State v. Harness, 214 Iowa 160, 165–166, 241 N.W. 645; and 3 Underhill's Criminal Evidence, Fifth Ed., section 648.

Here the jury was told, in substance, good character may be considered and if it, with other evidence, raises a reasonable doubt as to guilt then defendant should be acquitted. This is sufficient.

VIII. For the reasons set forth in Divisions I thorough V of this opinion the case

must be reversed and remanded with instructions to set aside the order heretofore entered overruling defendant's motion for new trial and for entry of order sustaining that motion.   .

Reversed and remanded with instructions.

All Justices concur.