[Crim. No. 3562. Second Dist., Div. Three. July 1, 1942.]

THE PEOPLE, Respondent, v. GILBERT BURNESS, Appellant.

Robert T. Linney and Buel R. Wood for Appellant.

Earl Warren, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

SCHAUER, P. J.—Defendant, upon trial by jury, was found guilty of the crime of receiving stolen property. His motion for new trial was denied and from this ruling, as well as from the judgment pronounced on the verdict, he appeals. Three points are urged: (1) that the information does not state a public offense; (2) that defendant was convicted on the uncorroborated testimony of an accomplice; and (3) that the trial court erred, to the prejudice of the defendant, in admitting over objection evidence tending to show a separate offense. Neither of the first two points is tenable but the third one presents an error which requires a new trial.

## Material Facts

For all of the evidence tending directly to establish the commission of the offense and defendant's connection therewith the plaintiff relies on the testimony of admitted thieves. The witness Boyle testified that prior to his arrest (some months before defendant's trial) he had been regularly engaged in stealing automobiles and disposing of the parts and accessories; that he had stolen a "few hundred;" that on the night of February 27, 1941, he stole a 1941 Chevrolet coupe (identified by stipulation as the property of one Melvin L. Williams). On the same night he removed from that car five green-painted wheels, together with their mounted U. S. Royal tires and tubes, and, by prearrangement with one Estes, placed such wheels and tires "in a garage in the 1700 block on Magnolia in the alley." He stated that in or about the month of February, 1941, and on one or more other occasions he had accompanied Estes to defendant's place of business, denominated the Broken Drum Wrecking Company, located on San Fernando Boulevard in Los Angeles County. While there, on the first occasion, he heard Estes ask defendant "how many tires he wanted the next time and whether he

would want any generators or anything else and how soon he could use some more." Defendant said he wanted some but the witness did not recall how many or what was ordered. Such witness further stated that on the occasion in February, 1941, he and Estes "delivered some tires and wheels."

The witness Estes testified in substance that he had been engaged for about twenty months in either stealing automobiles or in receiving and disposing of the parts and accessories of stolen cars. He said that he had made "twelve to fifteen hundred" sales of his "merchandise" and of that number that thirty-five or forty had been transactions with the defendant. He stated that his first deal with defendant was in June or July, 1939, concerning which time, speaking of tires and wheels, he testified, "I told him what I had and he asked me how hot they were and I said 'they are hot from two or three days back' and he said 'All right, bring them out and I will take a look at them.' " From then on, he said, until the witness' arrest in March, 1941, he saw the defendant "every week or ten days" and on each occasion either sold or delivered merchandise to him or collected for it or discussed proposed deals. He testified specifically that on the morning of February 28, 1941, he took from the "garage in the 1700 block Magnolia Street" five Chevrolet wheels with tires and tubes, and sold and delivered them to the defendant; that the wheels were painted green and the tires were U. S. Royal Cords, size 16-600; that the defendant paid him $25 for the merchandise. He described the transaction as follows: "I got out and went in and seen him. He said 'What have you got this time?' And I said 'Tires and wheels.' . . . He said 'Bring them in' and then he said 'Put them in that tire shed right there.' . . . He says 'I guess you want $5.00 each for these the same as yesterday?' And I said 'Yes, sir.' . . . He gave me $10.00 . . . said he would give me the rest of the money in about a week or ten days."

### Sufficiency of the Pleading

As to the first point, defendant contends that the information is insufficient in that it does not describe with adequate particularity the property alleged to have been unlawfully received by defendant. The pleading certainly is not a model to be commended and by the expenditure of a slight amount of legal skill and care could have been substantially improved, but its imperfection lies in the *uncertainty* of its

description rather than in failure to state any essential fact. The pertinent language alleged that defendant feloniously received "five wheels and tires, which was then and there of the personal property of Melvin L. Williams." It is true that defendant was not apprised by this pleading as to whether the wheels and tires had any connection with each other; as to whether the wheels were spinning wheels, emery wheels, bicycles, or some other or others of a vast number of types; or as to whether the tires were of steel or rubber, casings or tubes, or of other description. But if the defendant needed more particularity of averment to enable him to answer the charge his remedy was by demurrer (Penal Code, §§ 1004, 1012) and having failed to demur he must be deemed to have waived the defect (*People* v. *Mead,* (1904) 145 Cal. 500, 503 [78 Pac. 1047] ; *People* v. *Horvath,* (1913) 23 Cal. App. 306, 307 [137 Pac. 1069] ; *People* v. *Schroeder,* (1919) 43 Cal. App. 623, 625 [185 Pac. 507] ; *People* v. *Price,* (1927) 81 Cal. App. 668, 670 [254 Pac. 640].)

### Vendor of Stolen Property Is Not Accomplice of Vendee

■ In support of point two defendant urges that the witness Estes was an accomplice of defendant and that his testimony was not corroborated within the requirements of section 1111 of the Penal Code that "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." The definition of accomplice in the last sentence of the section quoted shows that defendant's position on this point is untenable. While the witness Estes may be regarded either as an accomplice of Boyle in stealing the automobile or as himself becoming guilty of receiving stolen property in his receipt thereof from Boyle, such offenses were complete before he contacted the defendant as to this particular property. By purchasing and receiving such property *from Estes* the defendant became guilty of an offense separate and distinct from that committed by Estes when the latter received it *from Boyle.* Under no construction of the evidence can the defendant's purchase and receipt

of the property from Estes be regarded as an effort by defendant to assist Estes in *his* unlawful receipt of the same merchandise from Boyle. Although the action of each tended to prevent the owner from again possessing his property such action in each case was obviously motivated by the desire to secure gain for himself alone. The defendant did not share or participate at all in the original receipt, or in the possession, of the property by Estes and Estes did not share or participate in any way in the possession of such property by defendant. Having sold and delivered the merchandise to defendant, Estes was no longer interested in it. The vendor of stolen property is not an accomplice of his vendee (see *People* v. *Williams*, (1935) 7 Cal. App. (2d) 600, 603 [46 P. (2d) 796]; *People* v. *Layman*, (1931) 117 Cal. App. 476, 480 [4 P. (2d) 244]; *In re Morton*, (1918) 179 Cal. 510, 513-514 [177 Pac. 453].) The sufficiency of the evidence to support the conviction is not challenged except on the basis that Estes is an accomplice of defendant. As upon the view above expressed such relationship did not exist we cannot sustain defendant's second point.

### ERROR IN RECEIVING IRRELEVANT EVIDENCE WITH PREJUDICIAL IMPLICATIONS

 Defendant's third point requires a further statement of facts. As a witness in his own behalf he testified that he had been in the automobile wrecking business for sixteen years; that he had never had in his possession any of the tires or wheels described by the plaintiff's witnesses; that he had never purchased anything from the witness Estes and that he had never known or even seen either Estes or Boyle until they appeared as witnesses against him. He stated particularly that he had been absent from his place of business during the months of June, July and August in the years 1939 and 1940. He also testified, "I never had any tires on my place except what came off automobiles that I bought, and I didn't pay much attention what make they were or what condition they were. I just go out and buy the automobile. If it has new tires on it why I am lucky." On cross-examination the defendant stated, "I used to buy wheels from the wheel dealers. What year they were and what make they were I couldn't tell you ... I had lots of Chevrolet wheels ... no 1940 or 1941 models."

At this stage of the proceedings the deputy district attor-

ney injected a series of questions which were neither material nor relevant to any issue before the court. He asked: "And you had four or five Zephyr wheels there, didn't you, 1941?" to which the defendant replied, "I don't remember paying any attention to Zephyr wheels. I don't think there were any wheels later than 1938 or 1939." The prosecuting attorney continued, "Just prior to your arrest didn't you pick up those Zephyr wheels, and state 'I am going to keep these until the heat blows down,' and then subsequently bring them back?" An objection to that question was sustained, but the deputy district attorney persisted as follows: "Q. As I understand it your testimony is that you don't recall having any Zephyr wheels in the place of business of the Model 1941 at the time you sold the place? A. To my knowledge up until the time I sold the place there were never any Zephyr wheels on the place. Q. The day after your arrest did you go over to the place of business and pick up four Zephyr wheels? A. The day after my arrest I was in jail until late in the afternoon. Q. Well, did you or didn't you? A. I did not."

Thereafter the deputy district attorney produced as a witness, one Levy, who was one of the persons to whom defendant had sold his place of business in March, 1941. Over the timely and proper objections of the defendant, the witness Levy was permitted by the court to be interrogated concerning the presence of some Zephyr wheels at the wrecking house and an asserted conversation with the defendant relative thereto. The witness stated that there was a set of Zephyr wheels on the premises when he and his partner took over the business. He testified further, "Mr. Burness [defendant] came into the place after he was released and said he thought it would be better to get that set of Zephyr wheels away from the place while the heat was on. He picked up those wheels and took them away from there and had them out for about three weeks. Then I demanded the wheels back or the money for the wheels and he brought them back."

The admission of the foregoing testimony relative to the Zephyr wheels was clearly error. Certainly it cannot be justified as impeachment. A witness may not be impeached on an immaterial or collateral matter (27 Cal. Jur. 107, 152; *People* v. *Chin Mook Sow,* (1877) 51 Cal. 597, 600; *People* v. *Worthington,* (1894) 105 Cal. 166, 171 [38 Pac. 689] ; *People* v. *Cole,* (1900) 127 Cal. 545, 550 [59 Pac. 984] ; *People* v. *Smith,* (1922) 189 Cal. 31, 35 [207 Pac. 518] ; *People* v. *Westcott,* (1927) 86 Cal. App. 298, 305 [260 Pac. 901].) It is not

competent for the prosecutor to introduce irrelevant evidence falling short of crime and designed merely to degrade and prejudice the defendant in the minds of the jury (8 Cal. Jur. 59; *People* v. *Nelson*, (1928) 90 Cal. App. 27, 34 [265 Pac. 366].) There was not the slightest proof that the Zephyr wheels were stolen property or that they had been acquired by defendant from the witness Estes or that they had any connection whatsoever with the issues being tried. Furthermore the situation presented by the record here is not similar to a case in which stolen property has been found in the possession of a defendant and in which he seeks to establish that he acquired possession of such property innocently. ▮ In such cases evidence of other offenses may sometimes be admissible to show plan, intent, or guilty knowledge (see *People* v. *DeVaughn*, (1934) 136 Cal. App. 746, 750-751 [29 P. (2d) 914] ; *People* v. *Stollmack*, (1937) 18 Cal. App. (2d) 471, 474-475 [64 P. (2d) 162]), but here there was no such issue. ▮ If any merchandise was sold and delivered to the defendant by the witnesses Estes and Boyle it was definitely stolen property. The question is, was the property sold and delivered by them to the defendant? On this point the evidence is squarely conflicting. The two admitted thieves say they did have such transaction; defendant denies any such transaction and denies even having seen or heard of Boyle or Estes before the day of his arrest. The stolen property was not found in his possession. While no motive appears for the making of a false charge by the witnesses the fact is obvious that so far as the circumstances in evidence are concerned they could as easily have lodged their charges against an innocent dealer as against a guilty one. The evil character of such witnesses is established by their own testimony and on their testimony, substantially unaided by circumstances, depends proof of defendant's guilt. Against their testimony were the positive denials of defendant, corroborated in part by other witnesses who were unimpeached and who placed the defendant outside the state at certain of the times when the prosecution witnesses said they had dealt with him at his place of business. In such a situation the error in admitting the gratuitously injected testimony of the witness Levy relative to the Zephyr wheels and his conversation with defendant concerning the same becomes manifestly prejudicial. By such error the defendant was prevented from having the fair trial to which every accused person is entitled. In such a

case the provisions of section 4½ of article VI of the Constitution do not justify an affirmance of the judgment (*People* v. *Duvernay*, (1941) 43 Cal. App. (2d) 823, 829 [111 P. (2d) 659].) ▮ While the evidence is legally sufficient to support the judgment, we are unable to conclude that defendant would have been convicted had the error not occurred. Accordingly the judgment must be reversed (*People* v. *Wilson*, (1913) 23 Cal. App. 513, 524 [138 Pac. 971]; *People* v. *Degnen*, (1925) 70 Cal. App. 567, 606 [234 Pac. 129]; *People* v. *Curtis*, (1939) 36 Cal. App. (2d) 306, 327-328 [98 P. (2d) 228].)

The judgment and the order denying a new trial are reversed and the cause is remanded for a new trial.

Shinn, J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied July 14, 1942, and respondent's petition for a hearing by the Supreme Court was denied July 29, 1942.