Arthur F. SMALLFIELD, Appellant,

v.

HOME INSURANCE COMPANY OF NEW YORK, a corporation, Appellee.

No. 13657.

United States Court of Appeals Ninth Circuit.

May 14, 1957.

Louis Elowitt, Los Angeles, Cal., for appellant.

Thomas P. Menzies, James O. White, Jr., Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

Smallfield appeals from a judgment of the District Court for the Southern District of California, Central Division sitting in diversity in an action for declaratory relief brought by the Home Insurance Company, hereafter the Company or Appellee, absolving the Company from any liability on a certain policy of insurance covering named pieces of jewelry, and denying Smallfield, hereafter appellant, recovery for loss allegedly suffered by reason of an alleged theft of certain pieces of jewelry covered by said policy.

The present action was brought in October, 1950, and after a trial in the district court judgment was entered for appellant, and an appeal taken by the Company to this court. The Company then moved this court under F.R.Civ.P. rule 60(b), 28 U.S.C.A., to remand the case to the district court on the ground inter alia that judgment had been entered erroneously, that new evidence had been discovered, and that fraud had been perpetrated by Smallfield. This court granted the motion on August 13, 1953.

Thereafter the district court vacated its judgment and ordered a further hearing at the conclusion of which the judgment from which the present appeal is taken was entered.

The facts giving rise to this dispute are as follows: appellee issued to appellant a "floater, all risk" insurance policy which became effective on July 25, 1950,

covering named items of jewelry of a total value of $11,700, which the policy recited were the property of appellant or of his "family of the same domicile".[1] Appellee accepted premiums tendered by appellant which it has not returned. Thereafter by means of an endorsement effective August 1, 1950, the policy was extended to include three more pieces of jewelry valued together at $10,800. An additional premium was tendered by appellant and accepted by appellee.

In September, 1950, appellant filed a proof of loss with appellee claiming that on August 20, 1950, three pieces of jewelry covered by the policy having an aggregate value of $11,000, were stolen from his domicile. Thereafter the present action was brought by the appellee seeking an adjudication of its liability under the policy.

In his answer to the complaint appellant prayed judgment for the value of the jewelry which he claimed had been stolen.

At the time of the entry of the judgment from which this appeal is taken, the court made the following findings of fact:

(1) that appellant did not have an insurable interest in the jewelry which he alleged had been stolen either when the insurance policy was written or when the alleged loss occurred; (2) that the claim filed with appellee by appellant for the alleged loss was false and dishonest and was an attempt to defraud appellee; and (3) that the pieces of jewelry which appellant claimed had been stolen had not in fact been stolen.

The foregoing findings of fact rest on the trial court's conclusion that the appellant was not worthy of belief, that he was in fact a "consummate liar". Hence the principal questions on this appeal are whether the evidence on which this conclusion is based (1) was properly admissible; (2) supports the conclusion of the trial court.

■ At the second trial of this case in the district court, which resulted in the judgment here appealed from, appellant admitted that subsequent to the events involved herein he had been convicted in a California state court of the felony of grand theft. Since it is the credibility of a witness at the time of his testimony before the court which is under scrutiny when the attempt is made to impeach him,[2] it appears immaterial that the conviction here used to impeach appellant and the facts from which it resulted occurred after the events giving rise to this case. Hence the conviction of grand theft was properly admissible to impeach appellant as a witness. 3 Wigmore, Evidence § 980 (3d ed. 1940).

Appellant was further impeached by inconsistent statements which he made as a witness at the trial concerning the manner in which he acquired the jewelry which he claimed had been stolen. Appellant testified at one time that the jewelry was given to him by his grandmother when he was six years old; at another time he stated that his grandmother gave it to him and to his mother prior to her death. Appellant's mother's testimony on this point was inconsistent with that of appellant. Further, appellant's father, A. L. Smallfield, who lived with appellant and his mother until 1926, testified that he saw nothing of the extremely valuable jewelry in question and that he gave $25.00 a week spending money to the grandmother from whom, according to appellant, this expensive jewelry came. Mr. I. Lipschultz, who married appellant's mother in 1926, and lived with her and appellant until 1940, stated that although there were times when they were short of food, he never saw or heard anything of the valuable jewelry which appellant and his mother said they then had. There is no doubt of

1. It was asserted by appellant that the items of jewelry in question were owned together by him and his mother, Mrs. Irving Lipschultz, who is not a party herein, having assigned her interest to appellant.

2. 3 Wigmore, Evidence § 927 (3d ed. 1940).

the propriety of consideration by the trier of fact of inconsistent statements made by appellant on the question of his reliability as a witness,[3] nor of the admissibility of the statements of the other witnesses to contradict appellant's testimony as to the acquisition of the jewelry covered by the policy.[4]

During the second trial appellee offered extensive testimony concerning appellant's felony conviction and concerning other incidents tending to show that appellant, who is a professional jewelry appraiser, was in the habit of stealing jewelry and other valuable chattels when making appraisals. The trial court admitted this line of evidence over objection and at the end of the trial denied a motion to strike this evidence, but stated that he was disregarding all of it except the testimony of certain witnesses.

Most of this evidence which the trial court stated it did consider was that of two police officers who testified concerning the interrogation of appellant at the time of his arrest on the felony charge. For example, one police officer stated that when appellant was charged with the theft of a diamond ring [5] and some furs belonging to a Mrs. Herman, he first denied the charge, and claimed that the furs were his, and that the diamond was a gift from his grandmother. Thereafter, the officer stated, appellant admitted the theft. Called as a witness by appellee later in the trial, appellant testified that he did not steal the diamond ring or the furs from Mrs. Herman. Similarly, two police officers testified that appellant had previously admitted to them that he had stolen an electric razor from the residence of Mrs. Herman. Later appellant testified that he did not steal the razor, and that he had received it as a gift from his half-sister. The officers further testified that appellant told them that he found mountings

for stones in his pockets after appraisals, and a jeweler testified that he had sold certain mountings to appellant which closely resembled those found in appellant's possession when he was arrested on the felony charge. Appellant, on the other hand, when called as a witness after this testimony had been received, testified that the mountings had come to him from his grandmother. Likewise the officers testified that appellant admitted to them that he found an old oval portrait (which he had in his possession when arrested) in his brief case after an appraisal job. At the trial, appellant testified that he had received the portrait as a gift from a cousin.

It is clear that the testimony of the police officers and others concerning events at the time of appellant's arrest which did not involve any of the jewelry covered by the insurance policy here involved was not material to the issues in this case. Hence this evidence could be admitted only to show a common plan on the part of the appellant, or to impeach him.

▮ Obviously the fact that appellant may have stolen jewelry on previous occasions is not admissible as evidence to prove that he stole the jewelry covered by the insurance policy.[6] It is only where a particular act is shown independently to have been done that thereafter other acts may be proved to show the intent with which it was done.[7] Since no evidence appears in the record here to show that the jewelry claimed to be covered by the policy was not the property of Smallfield, the other acts of appellant testified to by the police officers were entirely immaterial and irrelevant, and could not be admitted to show a common plan.

▮ The evidence of these other related acts of appellant, however, may be contended to be relevant for the purpose

3. Wigmore, Evidence § 1017.

4. Id. at § 1000.

5. The ring was not part of the jewelry covered by the policy involved in this case.

6. E. g., Larson v. Larsen, 1925, 72 Cal. App. 169, 236 P. 979.

7. 2 Wigmore, Evidence § 302, p. 200. See e. g., People v. Burness, 1942, 53 Cal. App.2d 214, 221, 127 P.2d 623.

of determining appellant's credibility. Yet even if we adopt the precarious assumption that the testimony of the police officers, given prior to any testimony by appellant, may now on appeal be held admissible for the purposes of impeachment, their testimony still appears to have been wrongly admitted. Since the matters concerning which the police officers testified were not material to the issues of the case, and were probative only of appellant's credibility, these matters are properly called "collateral".[8] It is the general rule that error in a witness's testimony on collateral matters cannot be shown to impeach him.[9]

Hence we are driven to the conclusion that the testimony of the police officers and of other witnesses as to the collateral matters was not admissible for any purpose. Further, the trial court expressly stated that it used this evidence in arriving at its decision.

■■■■ Under F.R.Civ.P. rule 52(a) this court may reject the trial court's findings of fact only where such findings are "clearly erroneous". Here there is evidence in the record which was properly received [10] which adequately supports the finding that appellant was not worthy of belief. The difficulty is that this finding was buttressed by the trial court's express reliance on evidence which was not admissible. This situation thus falls between two rules: (1) that the findings of the trial court may not be rejected if they can be supported by any rational view of the evidence [11] and (2) that "findings of fact induced by an error of the law are not binding".[12] Here through an error in the law of evidence the trial court "misapprehended the effect of the evidence" [13] in that he used the erroneously admitted evidence of the police officers and of the other witnesses who testified as to collateral matters to support a conclusion when in law this evidence was inadmissible and therefore entitled to no consideration whatever. While the trial court could have made the same finding on the evidence which was properly admitted, it did not do so, and we cannot say that it would have done so. This court lacks the power to make new findings of fact [14] and for us on appeal to assume that if the trial court had limited itself to consideration of only the evidence which was properly received it would have made the same finding is tantamount to making a new finding.

If we disregard the finding based on the inadmissible evidence, we find that there remains no sufficient basis to sustain the judgment because the judgment is based wholly on the finding as to appellant's credibility which in turn was founded on consideration of inadmissible evidence.

The judgment is vacated and the case remanded to the district court with directions to make findings based only on the properly admitted evidence.[15]

8. Wigmore states the test of collateralness as follows: "Could the fact, as to which error is predicated, have been shown in evidence for any purposes independently of the contradiction?" 3 Id. at 657.

9. 3 Wigmore, Evidence § 1003. See e. g., Shanahan v. Southern Pacific Co., 9 Cir., 1951, 188 F.2d 564, 568; People v. Burness, 1942, 53 Cal.App.2d 214, 220, 127 P.2d 623 (cases cited).

10. E. g., appellant's prior conviction, his inconsistent statements at the trial, and of course, his demeanor which the trial court could properly have considered for this purpose. 3 Wigmore, Evidence § 946.

11. See generally 5 Moore, Federal Practice 2600 et seq.

12. Id. at 2631; United States v. United States Gypsum Co., 1948, 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746.

13. Sanders v. Leech, 5 Cir., 1946, 158 F.2d 486, 487.

14. Waialua Agr. Co. v. Maneja, 9 Cir., 1954, 216 F.2d 466, 474, reversed on other grounds, 1955, 349 U.S. 254, 75 S. Ct. 719, 99 L.Ed. 1040.

15. Steccone v. Morse-Starrett Products Co., 9 Cir., 1951, 191 F.2d 197, 200 note 10.