[Crim. No. 7651.   Second Dist., Div. Two.   Nov. 23, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ARMANDO GONZALES SALAZAR, Defendant and Appellant.

Gladys Towles Root and Eugene V. McPherson for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant Salazar appeals from his judgment of conviction on three counts of receiving stolen property (Pen. Code, § 496). The first count involved a grinder; the second, an electric drill; and the third, three auto tires and wheels.[1] He was sentenced to the state prison.

For some five years defendant had conducted a body and fender shop at 4700 Floral Drive in East Los Angeles. Edward Womack had been employed at the Baker Metal Finishing Company in Monterey Park. While so employed, he stole from the company the items involved in Counts I and II. He had known defendant for approximately a year and had

---

[1]One Garcia was also convicted on Count III. He appealed from a county jail sentence. The appeal, however, has been dismissed.

assisted the mechanics at defendant's body shop upon occasion and had also worked on his own car there. He sold the grinder to defendant in the early part of 1960 for approximately ten dollars. Some months later he sold defendant the electric drill for eight dollars. Womack denied that he ever told defendant that either of these items had been stolen.

The tires and wheels involved in Count III were purchased from Jimmy Resa and Isadore Lopez on May 5, 1960. These items had also been stolen. Resa had known defendant for three or four years but had not seen him for approximately a year prior to November 1959. At that time he had a conversation with defendant about getting some property. Resa told Salazar that he was out again, using stuff [narcotics] and starting to hustle again. Resa had two or three new tires and wheels which he sold to Salazar for 10 dollars each. During the course of this conversation defendant remarked to Resa, "Well, it is good to see you because I had been getting stuff from other guys, they only used to bring one tire, or it would be used tires." He then stated, "I will let you know later what I want." Resa thereafter brought in an average of two or three tires a day to defendant. He also brought other stolen merchandise and sold it to defendant, such as a TV set, a Polaroid camera and tools. Lopez usually assisted Resa in the thefts. On May 4, the day before the incidents involved in Count III, Salazar told Resa that he was bringing in too many tires with Ford rims, that he needed tires with Chevy rims. Resa informed him that Chevvies were harder to get; that "I had tried to get them, but I couldn't promise him."

When Resa and Lopez drove in on the morning of May 5, Resa told Salazar that he had "the tires he wanted." Salazar asked him what he had. Resa told him he had two Fords and a Chevy. Salazar then inquired, "What happened, couldn't you get the other Chevy?" Resa told him, "No . . . I couldn't pick it up." Salazar said, "Well, let me look at the tires." Resa opened the trunk of his car and showed Salazar the tires. After some haggling, they agreed on $23 for the three. Garcia then came out and helped Resa put the tires in the trunk of another car. Salazar gave Lopez the $23.

At that time the police had Salazar's establishment under surveillance and saw Resa and Lopez drive up. The officers observed a conference between Resa, Lopez and Salazar and also observed Resa open the trunk of his car and all look in it. A few minutes later Salazar handed something to Lopez. Resa then took the tires out of the trunk of his car while Garcia

assisted him in putting them into another car. At this point the police appeared and placed the men under arrest. The officers took some money from Lopez's shirt pocket and exhibited it to Salazar. They asked him if he had given it to Lopez. He stated he knew nothing about the money. Defendant claimed that the grinder had been given to him by Womack who used to work for him and had left it when he quit and that he hadn't seen the electric drill previously. He denied having talked to Resa and Lopez and denied having seen or purchased the tires in question.

Defendant's initial contention is that the court committed prejudicial error in failing to give the jury certain requested instructions on circumstantial evidence.

The gist of the offense of receiving stolen property is the purchase or receipt thereof with knowledge that it was stolen. (42 Cal.Jur.2d, Receiving Stolen Property, § 6, p. 410.) "[I]t is not essential that such knowledge be actual and positive; it may be circumstantial and deductive." (*People* v. *Bycel,* 133 Cal.App.2d 596, 599 [284 P.2d 927].)

With respect to the grinder and the electric drill (Counts I and II), the People, in their effort to establish that defendant knew these items had been stolen, relied almost wholly upon circumstantial evidence. In such a case it is incumbent upon the court to instruct the jury that to justify a conviction the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion. (*People* v. *Candiotto,* 128 Cal.App.2d 347, 356 [275 P.2d 500]; *People* v. *Yokum,* 145 Cal.App.2d 245, 252 [302 P.2d 406]; *People* v. *Zerillo,* 36 Cal.2d 222, 233 [223 P.2d 223]; see also *People* v. *Hatchett,* 63 Cal.App.2d 144, 155 [146 P.2d 469] and *People* v. *Rayol,* 65 Cal.App.2d 462, 464 [150 P.2d 812], both cited with approval in *People* v. *Bender,* 27 Cal.2d 164, 175-176 [163 P.2d 8].)     Counsel for defendant requested appropriate instructions on this facet of the case but the trial court rejected each of them and failed to give any instruction touching the question of circumstantial evidence.[2] It was clearly prejudicial to thus fail to instruct the jury for there was no substantial direct evidence that defendant knew that either

---

[2]Counsel for defendant requested and the court refused to give the following instructions:

(a) I instruct you further that you are not permitted, on circumstantial evidence alone, or when circumstantial evidence is substantially relied on in the People's case, to find the defendant guilty of [the] [any] crime charged against him unless the proved circumstances not only are

of the items in Counts I and II had been stolen. Thus the requested instructions became vital to the case for it was essential that the jury understand and apply the principles embodied in the proposed instructions on circumstantial evidence. The failure to properly direct the jury in this important aspect of the case was not only error but prejudicial and requires a reversal of the conviction on these two counts.

Implicit in the jury's verdict on Count III is their acceptance of the testimony of Resa and Lopez from which it unmistakably appears that Salazar knew the tires and wheels in question were stolen. So, as to this count, circumstantial evidence played a minor role in defendant's conviction. Therefore the failure to give instructions on circumstantial evidence was not prejudicial.

But, argues defendant (as to the third count), Resa and Lopez were accomplices of defendant, hence their evidence required corroboration to sustain his conviction on that count (Pen. Code, § 1111). He then argues that there is no corroborative evidence of their testimony. The statement of this court in *People* v. *Polsalski*, 181 Cal.App.2d 795 [5 Cal. Rptr. 762], is apposite on this point (pp. 797-798): "It is settled law that the thief is not an accomplice of the receiver of stolen property unless the theft and the passing of the

---

consistent with the hypothesis that the defendant is guilty of the crime, but are irreconcilable with any other rational conclusion.

(b) When the case which has been made out by the People against a defendant rests entirely or chiefly on circumstantial evidence, and in any case before the jury may find a defendant guilty basing its finding solely on such evidence, each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt must be proved beyond a reasonable doubt.

(c) Two classes of evidence are recognized and admitted in courts of justice, upon either or both of which, juries lawfully may base their findings, whether favorable to the People or to the defendant, provided, however, that to support a verdict of guilt, the evidence, whether of one kind or the other or a combination of both, must carry the convincing quality required by law, as stated in my instructions.

One type of evidence is known as direct and the other as circumstantial. The law makes no distinction between the two classes as to the degree of proof required for conviction or as to their effectiveness in defendant's favor, but respects each for such convincing force as it may carry and accepts each as a reasonable method of proof.

Direct evidence of a person's conduct at any time in question consists of the testimony of every witness who, with any of his own physical senses, perceived such conduct or any part thereof, and which testimony describes or relates what thus was perceived. All other evidence admitted in the trial is circumstantial in relation to such conduct, and, in so far as it shows any act, statement or other conduct, or any circumstance or fact tending to prove, by reasonable inference, the innocence or guilt of the defendant, it may be considered by you in arriving at a verdict.

property to the alleged receiver of stolen goods were accomplished pursuant to an advance conspiracy to do those things. *People* v. *Lima,* 25 Cal.2d 573, 576 [154 P.2d 698] ; 'It is now settled in this state that the thief and the receiver of stolen property are not accomplices (*People* v. *Burness,* 53 Cal.App. 2d 214, 218-219 [127 P.2d 623]). This is so, because the receiver usually has no part in the theft, directly or indirectly, and the criminal act of knowingly receiving the stolen property occurs independently thereof and at a time subsequent to the completion of the asportation. And conversely, it has been said that inasmuch as a thief cannot receive from himself, he cannot be an accomplice of the receiver. The thief and the receiver are therefore generally said to be guilty of separate and distinct substantive offenses, and not being ''liable to prosecution for the identical offense,'' are not accomplices within the meaning of that term as defined in section 1111 of the Penal Code. There is, however, a well-established exception to this general rule.' Page 578: 'When there has been a conspiracy or prearranged plan between the thief and the receiver, the conspirators have been held to be accomplices even where, as is necessary under our statutory definition of accomplices (§ 1111, *supra*), the test is whether they are liable to prosecution for the identical offense or offenses. . . . Where, as here, the prosecution evidence discloses the existence of a conspiracy or agreement whereby the principal prosecution witnesses were to steal and defendant was to purchase the stolen property, it is both logical and reasonable to hold that they are accomplices in the offense or offenses resulting from execution of such plan. If we were to allow the conspiracy element to be disregarded and the accomplice relationship thereby eliminated, the prosecution could circumvent the rule requiring corroboration of accomplice witnesses.' [Citations.] ''

■ The testimony of Resa and Lopez would support an implied finding by the jury that they had an arrangement with defendant to steal automobile tires and wheels and that defendant would purchase same from them; that such an arrangement had been in effect and in operation for quite some time prior to May 5, 1960, when the incidents involved in Count III took place. Under the principles above stated, the jury reasonably could impliedly find that Resa and Lopez were accomplices of defendant.

■ The question then is: Was there sufficient corroboration of their testimony? In this connection it should be noted that the corroborating evidence need not of itself establish

guilt. (*People* v. *Rissman,* 154 Cal.App.2d 265, 278 [316 P.2d 60].) Even slight circumstantial evidence may suffice for this purpose. (*People* v. *Griffin,* 98 Cal.App.2d 1, 25-26 [219 P.2d 519].) ''[T]he corroborating evidence is sufficient if it tends to connect the defendant with the commission of the offense in such a way as may reasonably satisfy the trier of fact that the witness who must be corroborated is telling the truth.'' (*People* v. *Aadland,* 193 Cal.App.2d 584, 589 [14 Cal.Rptr. 462] ; *People* v. *Lyons,* 50 Cal.2d 245, 257 [324 P.2d 556] ; *People* v. *MacEwing,* 45 Cal.2d 218, 225 [288 P.2d 257].)

▮ Here the police watched from a distance the negotiations by which defendant received the stolen property from the thieves. They saw defendant with them at his place of business. They observed the parties engaged in conversation and defendant's inspection of the tires and wheels. They saw defendant hand something to Lopez. They observed the tires being taken out of the trunk of Resa's car and handed over to Garcia who placed them in another vehicle. Upon arresting defendant and Garcia the police recovered the exact amount from Lopez that Resa testified had been paid for the tires. Although the officers observed defendant talking to Resa and Lopez and inspecting the tires, he denied having talked to them. He also denied having seen the tires and wheels in question. These facts and circumstances were sufficient to connect defendant with the offense charged in Count III and reasonably to persuade the jury that the accomplices were telling the truth. (*People* v. *Davis,* 124 Cal.App.2d 173, 179-180 [268 P.2d 66] ; *People* v. *Antone,* 141 Cal.App.2d 681, 683-684 [297 P.2d 88].)

The judgment on Counts I and II is reversed; the judgment on Count III is affirmed.

Ashburn, J., and Herndon, J., concurred.