# IN THE COURT OF APPEALS OF IOWA

No. 19-0530
Filed March 3, 2021

**EDGAR CONCEPCION, JR.,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

Appeal from the Iowa District Court for Floyd County, Colleen Weiland, Judge.

Edgar Concepcion, Jr. appeals the district court's denial of his postconviction-relief application. **AFFIRMED.**

Christine E. Branstad of Branstad & Olson Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Heard by Vaitheswaran, P.J., and Doyle and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

A three-year-old child died while in the care of fourteen-year-old Edgar Concepcion Jr. Law enforcement officers questioned Concepcion and elicited a confession.

The State filed a delinquency petition in juvenile court and a simultaneous motion to waive the case to district court. The juvenile court granted the waiver motion.

The State charged Concepcion with several crimes, and Concepcion was tried as an adult in district court. A jury found him guilty of first-degree murder, first-degree sexual abuse, second-degree sexual abuse, and child endangerment resulting in bodily injury.

On direct appeal, the court of appeals found sufficient evidence to support the convictions based on "Concepcion's confession" and corroborating evidence in "medical reports and the testimony of the examining doctors." *See State v. Concepcion*, No. 10-1931, 2014 WL 69730, at *6 (Iowa Ct. App. Jan. 9, 2014). The court affirmed his convictions but vacated his sentences and remanded for resentencing in light of precedent precluding the imposition of life without parole on juveniles and requiring individualized re-sentencing hearings.

Concepcion filed a postconviction-relief application. The district court denied his claims. On appeal, Concepcion contends (1) he was actually innocent of the crimes, (2) his trial attorney was ineffective in failing to challenge his competency to stand trial and the trial court violated his due process rights by failing to suspend the trial to assess his competency, (3) certain medical testimony was inadmissible under recent precedent, (4) his trial attorney was ineffective in

stipulating to probable cause for detention, and (5) the interrogation method used by law enforcement officers was unconstitutional.

## I.     Actual Innocence

The Iowa Supreme Court recently recognized freestanding claims of actual innocence.  *See Schmidt v. State*, 909 N.W.2d 778, 795 (Iowa 2018).  The court stated:

> For an applicant to succeed on a freestanding actual-innocence claim, the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including [any] newly discovered evidence.

*Id.*

At the postconviction-relief hearing, Concepcion offered expert testimony on the cause of the child's death.  He characterized the testimony as "newly discovered evidence" and argued that it supported his claim of actual innocence.

The postconviction court concluded Concepcion failed to satisfy his burden of proof.  The court reasoned:

> First, what he purports to be newly discovered evidence is solely a new interpretation of evidence that existed at the time of criminal trial. Second, there is sufficient evidence for a reasonable fact finder to convict [Concepcion] in light of all of the evidence.  It is possible that a jury could find [him] not guilty after hearing all of the evidence, but his case is not strong enough to conclude by clear and convincing evidence that no jury could convict him.

On appeal, Concepcion sidesteps the question of whether the expert testimony was newly discovered evidence.  He argues "the evidence submitted during the [postconviction] trial, considered with the evidence during the underlying criminal case, shows [his] actual innocence by clear and convincing evidence."

Much of his argument is tied to expert testimony offered by both sides. We begin there, reviewing the record de novo. *See Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019).

At trial, associate state medical examiner Dr. Jonathan Thompson testified the cause of the child's death was "asphyxia . . . from lack of oxygen to the brain." Dr. Thompson stated "the manner of death [was] homicide, death at the hands of another individual." He discussed the difference between ligature strangulation—"where somebody puts a ligature, such as a rope or a belt, around somebody's neck"—and manual strangulation—"where . . . somebody puts their hands around the decedent's neck." He stated the child died "due to manual strangulation." When asked if there was "anything suggesting that [the child] died of anything other than asphyxia," he responded, "Absolutely not, no."

The defense called Dr. Peter Stephens, a forensic pathologist. He "disagreed with the cause of death as being asphyxia" and "disagreed with the manner of death as being homicide." He "ruled out ligature strangulation and manual strangulation" as causes of death, noting there was "absolutely no evidence that any injury to [the child's] neck occurred." He stated, "[T]he best explanation of [the child's] death" was "sepsis, period." He also saw "no evidence" suggesting the child "was sexually abused."

Dr. Michael Freeman, a forensic epidemiologist, also provided expert trial testimony for the defense. He opined that he had "never come across a case in which manual strangulation was accomplished without leaving any internal or external evidence of it at the throat." He also spoke to internal inconsistencies in Concepcion's confession.

As noted, Concepcion introduced a new expert at the postconviction hearing, forensic pathologist Dr. Thomas Young. Dr. Young was approached to "do an independent review of the autopsy." He opined that the autopsy findings were inconsistent with the police theory of sexual abuse, which he described as "far-fetched." He opined the cause of death was "cardiac arrest due to an enlarged heart."

Preliminarily, Concepcion contends Dr. Stephens's trial testimony "[o]n its own" supports his "claim of actual innocence." We disagree. Dr. Stephens's dispute with Dr. Thompson on the cause of the child's death was simply a battle of the experts, with the jury having last say on who was more credible. *See State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000) (noting the fact finder "is not obligated to accept opinion evidence, even from experts, as conclusive" and stating appellate courts "readily defer to" the fact finder's judgment, as it was "in a better position to weigh the credibility of the witnesses"). Concepcion failed to prove that Dr. Stephens unilaterally established "[f]actual and actual innocence." *See Dewberry*, 941 N.W.2d at 6.

As for Dr. Young's postconviction testimony, we agree with the postconviction court that it was not newly-discovered evidence but "solely a new interpretation of evidence that existed at the time of criminal trial." *See More v. State*, 880 N.W.2d 487, 499 (Iowa 2016) (requiring a postconviction applicant to show "(1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and

(4) that the evidence probably would have changed the result of the trial" (citation omitted)).

Assuming evidence to support a freestanding claim of actual innocence does not have to fit within the newly-discovered-evidence framework,[1] Dr. Young's testimony was inconsistent with the testimony of Concepcion's trial expert, Dr. Stephens. Dr. Young went so far as to denigrate Dr. Stephens's opinions, stating he "made egregious mistakes" and his testimony did not "make any sense." A hypothetical reasonable juror faced with their conflicting views could lend greater credence to Dr. Thompson's manual strangulation opinion. In short, Dr. Young's testimony failed to establish that no reasonable juror could convict Concepcion.

Our analysis of the expert testimony essentially resolves Concepcion's remaining assertions in support of his actual innocence claim.

First, we disagree there is "ample evidence in . . . both the district court and postconviction record to illustrate alternative, logical, and medically supported explanations as to [the child's] cause and manner of death." As discussed, the jury reasonably could have found Dr. Thompson's ultimate opinions more persuasive than those of Concepcion's experts. Concepcion's reliance on the view of a hospital physician who stated the cause of death was "undetermined" or "etiology [was] undetermined" is weakened by Dr. Thompson's later autopsy results together with his statement that the physician's report was "just kind of [a] brief[] summar[y]".

---

[1] In *Schmidt*, the court emphasized that the postconviction statute and, specifically, sections 822.2(1)(a) and (d) providing relief for constitutional violations and for newly discovered evidence, are "not the exclusive vehicles to bring freestanding actual-innocence claims." 909 N.W.2d at 798.

Second, Concepcion's assertion that "the medical examiner's testimony could not specify any injuries to [the child] were caused during the time [Concepcion] was [the child's] caregiver" does not advance his actual innocence claim because none of the three first-degree murder theories on which the jury was instructed required proof that he was a caregiver at the time of the child's death. *See* Iowa Code § 707.2 (2009). In any event, there is ample testimony from other witnesses on Concepcion's care-giving role.

Third, Concepcion's assertion that his "description of [the child's] injuries and death *on the day it happened* exactly mirror the manner in which a person would naturally die from an enlarged heart, ruptured bowel, and sepsis" is undercut by Dr. Thompson's opinion on the cause and manner of death. It also is undercut by other statements Concepcion made during the interrogation.

Fourth, Concepcion's expert testimony on internal inconsistencies in his confession was undermined by Dr. Thompson, who agreed with the prosecutor that all the injuries he saw to external parts of the child's body were consistent with Concepcion's statement of what he did to her. We recognize that his testimony could be viewed as an improper credibility assessment. *See State v. Tyler*, 867 N.W.2d 136, 165–66 (Iowa 2015) (concluding that "Dr. Thompson's opinions on the cause and manner of death crossed that very thin line between testimony that assists the trier of fact and testimony that vouches for a witness's credibility"). We are not convinced his response to the prosecutor's question crossed the line.

Fifth, the child's "symptoms of terminal internal injury weeks prior to her death" were indeed noted by the defense experts. But, as discussed, their

disagreements with each other enhanced Dr. Thompson's manual strangulation theory.

We turn to Concepcion's assertion that his crime-free history warranted a finding of actual innocence. The jury was instructed that evidence of Concepcion's "character for non-violence . . . should be considered with all other evidence in determining whether" he was guilty or not guilty. The instruction further stated,

> If the evidence of such good character as to non-violence is good enough, together with all of the other evidence, to raise a reasonable doubt as to the defendant's guilt, he must be acquitted, even though without such proof of good character the jury would convict. However, the defendant's previous good character as to non-violence is not a defense if you find by evidence beyond a reasonable doubt that the defendant committed the crime charged.

See State v. Levy, 160 N.W.2d 460, 469 (Iowa 1968) (affirming a similar instruction). The jury found beyond a reasonable doubt that Concepcion committed certain crimes. Concepcion failed to prove no reasonable juror would find otherwise based on his character for non-violence.

Finally, Concepcion asserts the absence of witnesses who heard or saw "any commotion or struggle" warranted a finding of actual innocence. The jury was instructed that "[t]he law makes no distinction between the weight" given "to . . . direct or circumstantial evidence." Accordingly, no eyewitness testimony was needed to find Concepcion guilty. That said, at least one member of the household saw enough to raise serious concerns. Concepcion's adult sister testified she was in her upstairs room when she heard Concepcion yelling at another boy to call her. She was about to go downstairs when Concepcion came up with the child. Concepcion told her the child fell in the bathroom. The sister saw the child's eyes "fluttering" and noticed "her lips [were] kind of purple." She called 911. Although

she did not see what transpired in the bathroom, she saw the immediate aftermath. Her testimony undermines Concepcion's actual innocence claim.

In sum, the record failed to establish that "no reasonable fact finder could convict [Concepcion] of the crimes." *Schmidt*, 909 N.W.2d at 795. We affirm the postconviction court's denial of Concepcion's freestanding claim of actual innocence.

## II.    *Competency*

Concepcion argues his trial attorney was ineffective in failing to obtain a competency evaluation prior to trial. The State responds that the issue was raised and deemed waived on direct appeal and Concepcion is precluded from re-litigating the issue. *See Concepcion*, 2014 WL 69730, at *4 (concluding the claim that "counsel was ineffective in failing to raise the question of [his] competence to stand trial" was "not supported by any argument and so it [was] waived"); *see also* Iowa Code § 822.8.

Section 822.8 states:

> All grounds for relief available to an applicant under this chapter must be raised in the applicant's original, supplemental or amended application. Any ground finally adjudicated or not raised, or knowingly, voluntarily, and intelligently waived in the proceeding that resulted in the conviction or sentence, or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

In *State v. Johnson*, 784 N.W.2d 192, 196 (Iowa 2010), the supreme court acknowledged that the provision had been construed to require ineffective-assistance-of-counsel claims to be raised on direct appeal and to require "a fairly

specific description of such claims before they would be preserved for a postconviction-relief proceeding." But the court concluded the enactment of Iowa Code section 814.7 in 2004 altered the analysis. *Id.* at 197.[2] That provision eliminated the obligation to raise an ineffective-assistance-of-counsel claim on direct appeal to preserve it for postconviction relief. *Id.* The court stated:

> We think it would be inconsistent with the rule that a defendant is not required to raise ineffective-assistance claims on direct appeal in order to preserve such claims for postconviction relief, yet hold that such claims cannot be preserved when they are raised in a general or conclusory manner on direct appeal. Moreover, section 814.7(3) clearly gives the appellate court only two choices when an ineffective-assistance claim is raised on direct appeal: (1) "decide the record is adequate to decide the claim," or (2) "choose to preserve the claim for determination under chapter 822."

*Id.* at 198. The court held "defendants are no longer required to raise ineffective-assistance claims on direct appeal, and when they choose to do so, they are not required to make any particular record in order to preserve the claim for postconviction relief. *Id.*; *see also State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018) ("[T]he court of appeals found [the defendant] waived his ineffective-assistance claim by only including a cursory discussion of ineffective assistance in a footnote. Upon our de novo review, we find this is error. If the development of the ineffective-assistance claim in the appellate brief was insufficient to allow its consideration, the court of appeals should not consider the claim, but it should not outright reject it." (citing *Johnson*, 784 N.W.2d at 198)). In light of *Johnson* and *Harris*, we believe the court of appeals' conclusion that the claim was waived for

---

[2] Iowa Code section 814.7 was amended effective July 1, 2019, to preclude consideration of ineffective assistance claims on direct appeal. The supreme court declined to apply the provision to judgments of conviction and sentence imposed before that date. *See State v. El-Amin*, 952 N.W.2d 134, 137 n.1 (Iowa 2020).

insufficient argument did not prevent the postconviction court from reaching the merits of the ineffective-assistance claim.  We turn to the merits.

Iowa Code section 812.3(1) states:

> If at any stage of a criminal proceeding the defendant or the defendant's attorney, upon application to the court, alleges specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, the court shall suspend further proceedings and determine if probable cause exists to sustain the allegations.

The postconviction court concluded:

> [T]he factors put forth by [Concepcion] do not constitute a "*mental disorder* which prevents [Concepcion] from appreciating the charge, understanding the proceedings, or assisting effectively in the defense . . . ."  Iowa Code § 812.5(2) ([emphasis] added).  He does not aver a mental illness, learning disability, brain trauma, or other disorder.  As to his *ability*, evidence here certainly demonstrates that observers thought [Concepcion] struggled to understand and participate in the criminal proceedings.  But there also exists evidence that [Concepcion] *did* appreciate the charges, *did* understand the proceedings, and *did* assist his defense, at least at a rudimentary level.  [Concepcion] asserts that requesting a competency evaluation "never crossed [trial counsel's] minds." . . .  It is meaningful to this court that experienced counsel, who—as shown in the juvenile and criminal record—clearly knew how to assert issues and advocate zealously for their client, did not raise competency concerns, despite [Concepcion's] difficulties.
> In short, Defendants come to the court with a variety of difficulties and barriers—[Concepcion's] more than most.  But he has not provided sufficient evidence and authority to meet the burden to show that his obstacles rose to the level of a mental disorder that rendered him incompetent.  Accordingly, the court proceeding was not unconstitutional.  And, because counsel does not have a duty to raise an issue without merit, trial counsel was not ineffective.

The record supports the court's findings.

Concepcion's attorney testified by deposition that she did not request a competency evaluation because she "wasn't thinking that [c]hapter 812 would apply to incompetency that was not based on mental illness."  She was also asked

whether she had "any reason to believe that [Concepcion] had any sort of mental illness or mental incapacity." She responded, "No, I did not."

Notably, counsel asked child psychiatrist Dr. Jerome Fialkov to evaluate Concepcion at the outset. Although his charge was "to determine if [Concepcion] was amenable to treatment in the Juvenile Justice System," many of his findings pointed to the futility of seeking a competency hearing. For example, Dr. Fialkov noted that there was "limited evidence of a psychiatric disorder as observed by [Concepcion's] mother and teacher"; Concepcion "had no psychotic symptoms such as hallucinations or delusions"; and he "felt minimal sadness and depression." True, Concepcion told Dr. Fialkov he "[was] experiencing stress related emotions and, to a lesser extent, behavior, feeling depressed, anxious and . . . [having] rare suicidal thoughts";[3] as well as "inattention" and "disturbed sleep." But these disclosures did not prompt Dr. Fialkov to diagnose Concepcion with a "mental disorder."

Concepcion deals with the absence of a diagnosis by citing Dr. Fialkov's apparent testimony at the juvenile waiver hearing that he had an adjustment disorder at the time of the crimes. That testimony does not appear in our record but was noted by the juvenile court in the order granting the State's waiver motion.[4]

---

[3] Dr. Fialkov found "no indication of immediate suicidal potential."

[4] Concepcion also refers to a re-evaluation Dr. Fialkov performed more than six years after his initial evaluation, together with his deposition testimony admitted at the postconviction hearing. Dr. Fialkov stated Concepcion "has a major mental illness currently that is suggestive of an Adjustment Disorder." He tied the recent diagnosis to "the stress" Concepcion was "experiencing being incarcerated for life and [an] imminent court hearing for resentencing." He did not opine the illness was present in 2009. And his comment that "had [Concepcion's] competence to stand trial been assessed in the Juvenile Court hearing, this may have led to a different outcome" was nothing more than speculation.

Assuming evidentiary support for the court's finding, Concepcion failed to establish that the adjustment disorder prevent[ed] him from "appreciating the charge, understanding the proceedings, or assisting effectively in the defense." *See* Iowa Code § 812.3(1); *State v. Lesnic*, No. 18-1857, 2020 WL 1049826, at *4 (Iowa Ct. App. Mar. 4, 2020) (concluding a diagnosis of adjustment disorder with anxiety did "not support the conclusion that [the defendant] had a mental disorder that prevented her from understanding the proceedings"). Dr. Fialkov stated Concepcion's "[s]kill strengths" included "concentration," "paying attention in class," and "understanding concepts," and his "[a]ttention and concentration were normal during the interview." He concluded, "Based on the consistency and clarity of his responses, spontaneous comments and behavior," "the information obtained during th[e] interview" was "reliable and valid."

Dr. Fialkov also undermined Concepcion's assertion that a "language barrier" impeded his ability to assist in his defense. Concepcion was in ninth grade at the time of the child's death and spent his childhood years in the Philippines, speaking a language other than English. Dr. Fialkov reported that, on his arrival in the United States, he "had some language assistance in English as a second language classes from 6th through 8th" but had "not required any additional instructional modifications." Although Concepcion's knowledge of English was not sufficiently advanced to express abstract thoughts, Dr. Fialkov determined that Concepcion's "[t]hought processes were logical and coherent." *See State v. Bell*, No. 11-1263, 2012 WL 3590752, at *2 (Iowa Ct. App. Aug. 22, 2012) (noting the

defendant "communicated effectively and testified coherently" and there was "no evidence of irrational behavior" on the part of the defendant).[5]

In short, the record does not support a conclusion that Concepcion met the statutory incompetency standard. It follows that his trial attorney could not have breached an essential duty in failing to raise the issue. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (requiring proof of deficient performance and prejudice to establish ineffective assistance of counsel). It also follows that the district court did not violate Concepcion's due process rights by failing to suspend the proceedings to assess his competency. *See also* Iowa Code § 812.5(2) ("If the court, by a preponderance of the evidence, finds the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, the court shall suspend the criminal proceedings indefinitely."); *State v. Edwards*, 507 N.W.2d 393, 395 (Iowa 1993) ("Whether an inquiry is required on a defendant's competency depends on several factors. These include (1) the defendant's irrational behavior, (2) any demeanor at the trial that suggests a competency problem, and (3) any prior medical opinion on the defendant's competency to stand trial.").

### III. *Medical Examiner's Opinion on Cause of Death*

In the postconviction proceeding, Concepcion claimed the trial court should have excluded Dr. Thompson's testimony. He argued, "[T]here is new case law

---

[5] Dr. Fialkov testified by deposition that "the competency issue [was] related to the language issue." That testimony nine years after the crimes and without elaboration did not move the needle towards a finding of incompetency.

holding that a medical examiner or pathologist cannot offer an opinion regarding manner of death based solely on a confession." Concepcion relied on *State v. Tyler*, 867 N.W.2d 136 (Iowa 2015), decided after the court of appeals filed its opinion in his direct appeal.

In *Tyler*, the court asked whether a medical examiner could opine on the cause or manner of death "based largely on uncorroborated witness statements or information obtained through police investigation." 867 N.W.2d at 155. The court stated the question was "an issue of first impression in Iowa." *Id.* The court held "Dr. Thompson's opinions were based primarily, if not exclusively, on [the defendant's] inconsistent and uncorroborated statements to police" and his opinions as to the cause of death were "inadmissible under [Iowa Rule of Evidence] 5.702." *Id.* at 163, 164.

The postconviction court denied Concepcion's *Tyler*-based claim. The court preliminarily noted that the court of appeals rejected a challenge to the admissibility of Dr. Thompson's testimony and, if *Tyler* was not viewed as new law but an elaboration of existing law, Concepcion was barred from re-litigating the issue. The court also rejected the claim on the merits, concluding Dr. Thompson's testimony "did not cross the line discussed in *Tyler.*" The court acknowledged that Dr. Thompson relied on Concepcion's "interview in forming his opinion as to cause and manner of death" but noted that "he also made independent medical findings consistent with asphyxia caused by another person."

Concepcion takes issue with the court's conclusions. We elect to bypass the question of whether *Tyler* announced a new rule of law and whether, if it did, the rule should apply retroactively. *See Thongvanh v. State*, 938 N.W.2d 2, 10–

13 (Iowa 2020) (discussing framework for determining whether new substantive and criminal procedural rules should be applied retroactively); *State v. Ragland*, 836 N.W.2d 107, 114 (Iowa 2013) ("Normally, procedural changes do not apply retroactively, while substantive rules of law and watershed rules of criminal procedure have retroactive application."). Assuming retroactive application of *Tyler* was warranted, we discern no error in the district court's conclusion that *Tyler* is distinguishable. As the court explained, Dr. Thompson relied on more than Concepcion's confession in reaching his opinion on the cause and manner of death; he performed an autopsy and referenced the autopsy results in explaining his opinion. His opinion did not violate rule 5.702. *See Tyler*, 867 N.W.2d at 167 (declining to create a "bright-line rule to govern every criminal case in which a medical examiner is called to testify to a victim's cause or manner of death"); *State v. Lopez*, No. 16-1489, 2018 WL 6719728, at *12 (Iowa Ct. App. Dec. 19, 2018) (finding "Lopez's reliance on *Tyler* [was] misplaced" in light of the expert's testimony that "his manner-of death-opinion was based on his autopsy findings, but witness statements potentially could have changed his findings").

## IV. *Stipulation to Probable Cause for Detention*

As noted, this case began with the State's filing of a delinquency petition in juvenile court. Under the statute governing delinquency petitions, the child could not be placed in detention unless there was "probable cause to believe the child . . . committed a delinquent act" and one of several conditions were met. *See* Iowa Code § 232.22(1)(d).

On direct appeal, Concepcion argued "the charges were not supported by probable cause." The court of appeals concluded he "waived a challenge to the

finding of probable cause by stipulating there was in fact probable cause at the initial detention hearing. Therefore, he cannot now assert this argument on appeal." *Concepcion*, 2014 WL 69730, at *2.

On postconviction relief, Concepcion claimed that counsel was ineffective in stipulating to probable cause for detention. *See* Iowa Code § 232.44(4) ("At the hearing to determine whether detention or . . . care is authorized . . . the court shall admit only testimony and other evidence relevant to the determination of whether there is probable cause to believe the child has committed the act as alleged in the petition and to the determination of whether the placement of the child in detention . . . is authorized."). In support of the claim, his trial attorney testified the attorney who first represented Concepcion in the juvenile court matter stipulated to a probable cause finding "in relation to a detention hearing" and that attorney, who has since passed away, "was unaware that" his decision would have "negative repercussions" on Concepcion's resistance to the State's motion to waive the case to district court. In counsel's view, the stipulation was "really disastrous from the standpoint of a waiver hearing . . . [b]ecause that's one of [the] prongs of proof that the State needs to show in order to obtain a waiver." *See id.* § 232.45(6)(b) (authorizing waiver to district court if three conditions are satisfied, including if the juvenile court determines "that there is probable cause to believe that the child has committed a delinquent act which would constitute the public offense").[6]

---

[6] Iowa Code section 232.45(6) states in full:

At the conclusion of the waiver hearing the court may waive its jurisdiction over the child for the alleged commission of the public offense for the purpose of prosecution of the child as an adult if all of the following apply:

a. The child is fourteen years of age or older.

18

Concepcion's argument would hold sway if the juvenile court had relied on counsel's stipulation to probable cause for detention in finding probable cause for waiver of the case to district court. The court made no mention of the stipulation, instead relying on the evidence offered at the waiver-to-district court hearing. That evidence included Concepcion's confession; the testimony of law enforcement officers; the testimony of Dr. Stephens, Dr. Fialkov, and a State expert; and the testimony of numerous other individuals, together with a long list of exhibits. The court made detailed findings based on the evidence, including credibility findings. Only then did the court conclude "that all allegations contained in the State's [a]mended [p]etition alleging delinquency are supported by abundant probable cause." *See id.* 232.45(6)(b). Because the court did not rely on the stipulation, we agree with the postconviction court that Concepcion was not prejudiced by the stipulation.

## *V.* *Interrogation of Concepcion*

Concepcion moved to suppress his confession. The trial court denied the motion, concluding in part that his statements to law enforcement authorities were voluntary. The court specifically found "there was not any coercion or improper

---

b. The court determines, or has previously determined in a detention hearing under section 232.44, that there is probable cause to believe that the child has committed a delinquent act which would constitute the public offense.
c. The court determines that the [S]tate has established that there are not reasonable prospects for rehabilitating the child if the juvenile court retains jurisdiction over the child and the child is adjudicated to have committed the delinquent act, and that waiver of the court's jurisdiction over the child for the alleged commission of the public offense would be in the best interests of the child and the community.

promises given by" the law enforcement officers. The court of appeals affirmed the ruling, stating there was no "indication Concepcion's statements were involuntary." *Concepcion*, 2014 WL 69730, at *4.

In the postconviction proceeding, Concepcion argued the interrogation was unconstitutional. He attached the affidavit of Dr. Richard Ofshe describing the "Reid method" of interrogation and comparing it to the techniques used by law enforcement officers in Concepcion's interrogation. Dr. Ofshe attested the Reid method was marked by an "introductory period," which included "[s]ome amount of rapport building"; an "accusatory" phase characterized by law enforcement officers' use of lies or overstatements, including "[t]he idea that leniency is available if the suspect complies with the interrogator's wishes"; and a final phase in which the suspect is led to believe

> he has only two choices—to convince the interrogator that the evidence on which the interrogator's certainty of guilt is based is mistaken, or to try to placate the interrogator and obtain whatever benefit the interrogator has been suggesting or promising will result from compliance before the interrogator terminates the interrogation and arrests him.

Applying this framework, Dr. Ofshe opined:

> [The] Investigators . . . conducted a Reid style interrogation of of Edgar Conception, Jr. They did so without regard to the danger this created for coercing a statement from Edgar and took no steps to establish that the compliance they obtained from Edgar reflected anything other their pressing him to agree with their demands.

Dr. Ofshe's description of the Reid method leads us to conclude that Concepcion's current argument is simply a variation of his argument that the confession was involuntary. Because that argument was raised in his suppression motion, decided by the trial court, and affirmed on the merits in his direct appeal,

we conclude the issue was raised and litigated and could not be relitigated in the postconviction proceedings.  *See* Iowa Code § 822.8.  Accordingly, we decline to revisit the merits.

We affirm the denial of Concepcion's postconviction-relief application.

**AFFIRMED.**